**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827

07 CV 10321

NOV 1 4 2007
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANNMARIE MALLOZZI, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

                  Plaintiff,

                  vs.

INDUSTRIAL ENTERPRISES OF AMERICA, INC.;
JOHN MAZZUTO; JORGE YEPES; DENNIS
O'NEILL; and JAMES MARGULIES,

                  Defendants.

-------------------------------------------------------------X

CASE No.:

CLASS ACTION COMPLAINT

**JURY TRIAL DEMANDED**

Plaintiff, Annmarie Mallozzi individually and on behalf of all other persons similarly

situated, by her undersigned attorneys, for her complaint against defendants, alleges the following

based upon personal knowledge as to herself and her own acts, and information and belief as to all

other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys,

which included, among other things, a review of defendants' public documents, conference calls and

announcements made by defendants, United States Securities and Exchange Commission ("SEC")

filings, wire and press releases published by and regarding Industrial Enterprise of America, Inc.

("IEAM", or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased the common stock of IEAM between November 14, 2006 through November 8, 2007 (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.    This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b), as a substantial part of the conduct complained of herein occurred in this District.

5.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.    Plaintiff Annmarie Mallozzi, as set forth in the accompanying certification, incorporated by reference herein, purchased IEAM securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.    Defendant IEAM is a Nevada Corporation with its principal executive offices located at 711 Third Avenue, Suite 1505, New York, New York 10017.  IEAM is an automotive aftermarket supplier of anti-freeze, motor oil and other chemical products used in the automotive industry.  From the beginning of the Class Period to April 23, 2007, the Company's common stock was listed on the NASDAQ Bulletin Board under ticker "IEAM.OB".  All relevant times thereafter, the Company's common stock was listed on NASDAQ Capital Market under ticker "IEAM".

8.    Defendant John Mazzuto ("Mazzuto") at all relevant times herein was the Company's Chairman, Director, and Chief Executive.  As alleged herein, Mazzuto also served as the Company's CFO from December 2006 to March 19, 2007, and from May 2007 to September 2007.

9.    Defendant Jorge Yepes ("Yepes") at all relevant times herein was the Company's CFO since being appointed to that position on or about September 4, 2007.

10.    Defendant Dennis O'Neill ("O'Neill")  was the Company's CFO from March 19, 2007, to May 2007.

11.    Defendant James Margulies ("Margulies") was the Company's CFO from the beginning of the Class Period to approximately December 2006.

12.    Mazzuto, Yepes, O'Neill and Margulies are collectively referred to hereinafter as the "Individual Defendants."

3

13.     During the Class Period, each of the Individual Defendants, as senior executive officers, agents, and/or directors of IEAM and its subsidiaries and affiliates, was privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

14.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.

15.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that dissemination of the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein is the result of collective actions of the narrowly defined group of defendants identified above.  Each of the above officers and directors of IEAM and its subsidiaries and affiliates, by virtue of his position with the Company, directly participated in the management of the Company, was directly involved in the day-

4

to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements regarding the Company were being issued, and approved or ratified these statements, in violation of the federal securities laws.

16.     As officers, directors and controlling persons of a publicly-held company whose securities were and are registered with the SEC pursuant to the Exchange Act, and that was traded on the NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

17.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with IEAM, each of the Individual

Defendants had access to the adverse undisclosed information about IEAM's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about IEAM and its business, and issued or adopted by the Company, materially false and misleading.

18.    The Individual Defendants, because of their positions of control and authority as officers, directors, agents, and/or controlling persons of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or to cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and press releases detailed herein and is therefore primarily liable for the representations contained therein.

19.    Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of IEAM securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme (i) deceived the investing public regarding IEAM's business, operations, management and the intrinsic value of IEAM's securities; and (ii) caused Plaintiff and other members of the Class to purchase IEAM securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

20.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons who purchased the common stock of IEAM during the Class Period and who were damaged thereby. Excluded from the Class

are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, IEAM's securities were actively traded on the NASDAQ Bulletin Board.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.  Members of the Class may be identified from records maintained by IEAM or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

22.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

23.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

24.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)  whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)  whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of IEAM; and

7

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

25.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

26.    The Class Period begins on November 14, 2006, when the Company filed with the SEC its annual report for the fiscal year ended June 30, 2006, on Form 10-KSB.  The Form 10-KSB was signed and certified by both Defendant Mazzuto and Defendant Margulies, and each separately certified the Form pursuant to the Sarbanes-Oxley Act of 2002 ("SOX").

27.    On February 16, 2007, the Company issued a materially false and misleading press release announcing its results for the second quarter ended December 31, 2006.  The announcement states in relevant part:

**Industrial Enterprises of America Reports Second Quarter Revenue of $17 Million**
Friday February 16, 8:00 am ET
NEW YORK--(BUSINESS WIRE)--Industrial Enterprises of America, Inc. (OTC BB:IEAM - News), a specialty automotive aftermarket supplier, today announced results for the fiscal second quarter and six months ended December 31, 2006.

Revenue for the second quarter was a record $17.0 million as compared with $10.0 million in the first fiscal quarter of 2007 and $5.6 million for the same period in fiscal 2006. The increase over last year's second quarter was partially due to the inclusion of the Pitt Penn Group, acquired January 31, 2006, which added approximately $5.0 million in revenue, and also reflects increased demand across the Pitt Penn and Unifide product lines. The 70% sequential revenue gain over the first quarter was due to the company's higher production level, resulting from operating efficiencies combined with strong order

8

flow within the company's end markets.

The company reported gross profit of $4.0 million, representing a gross margin of 23.7%, versus $2.7 million, or 27.1%, in the first quarter of fiscal 2007 and $1.4 million, or 24.7%, in the second quarter of fiscal 2006. The decrease in margins was due to a different product mix as a result of expanding operations and the mild weather in the December quarter. EBITDA (earnings before interest, taxes, depreciation and amortization) for the quarter was $2.8 million, or $0.20 per share. Income from operations was $2.3 million in the quarter versus $345,000 in the first quarter. Notably, operating expenses were 25%, or $600,000, lower than the first quarter reflecting the absence of one-time expenses arising from the consolidation of our facilities. The net loss for the quarter was ($1.8 million), which includes $4.1 million in non-cash expenses associated with the company's convertible securities and warrants. The conversion of over 50% of the convertible notes and exercise of warrants resulted in an accelerated charge to income of the valuation of such securities added to the balance sheet arising from their issuance. The company's fully diluted shares calculated using the treasury method as of December 31, 2006 was 13.9 million.

For the six months of fiscal 2007, Industrial Enterprises of America reported revenue of $27.0 million versus $10.6 million in the same period last year, reflecting the acquisition of Pitt Penn and increased demand for its automotive products. Gross profit was $6.8 million, representing a gross margin of 25.2%, versus $2.8 million, or 26.6%, for the same period in fiscal 2006. EBITDA was $5.8 million, or $0.41 per share. The net loss for the period was ($1.1) million, versus a loss of $(0.8) million for the first half of fiscal 2006.

28.    That same day the Company filed with the SEC its quarterly report for the second quarter ended December 31, 2006, on Form 10QSB, repeating many of the same statements set forth above. The 10QSB was signed by Defendant Mazzuto as CEO and CFO and was separately certified by him pursuant to SOX.

29.    On March 19, 2007, the Company announced that it had appointed Defendant O'Neill as the Company's CFO, replacing Defendant Mazzuto, who up until that time had been acting as the Company's CEO and CFO.

30.    On May 21, 2007, the Company filed with the SEC a materially false and misleading quarterly report for the third quarter ended March 31, 2007, on Form 10QB. The 10QSB was signed

by Defendant Mazzuto as CEO and CFO of the Company and was separately certified by him pursuant to SOX.

31.    On May 22, 2007, the Company issued a materially false and misleading press release highlighting its third quarter results. The press release states in relevant part:

NEW YORK--(BUSINESS WIRE)--Industrial Enterprises of America, Inc. (NASDAQ: IEAM - News), a specialty automotive aftermarket supplier, today announced results for the fiscal third quarter and nine months ended March 31, 2007. Revenue for the third quarter was $17.6 million as compared with $9.0 million for the same period in fiscal 2006. The increase in revenue over last year was partially due to the inclusion of the Pitt Penn Group, acquired January, 2006, and more importantly due to increased production capabilities.

For the period ended March 31, 2007, Management has determined that its inventory accounting method for the Pitt Penn and Unifide subsidiaries needed to be corrected from average cost accounting to FIFO (First In, First Out). Absent the accounting correction, results for the third quarter would have been a gross profit of $4.8 million, representing a gross margin of 27.3%, and EBITDA (earnings before interest, taxes, depreciation and amortization) of $3.7 million, or $0.29 per share, calculated using the treasury method, or 13 million shares as of March 31, 2007.

As a result of this correction in inventory accounting, cost of goods sold for the third quarter was $0.9 million higher than it would have been under the prior methodology. Reported gross profit for the third quarter was $3.9 million, representing a gross margin of 22.2%, versus a loss of $(1.9) million in the third quarter of last year. EBITDA was $2.8 million, or $0.22 per share. The net loss for the three months ending March 31, 2007 includes approximately $9,300,000 in non-cash charges.

For the first nine months of fiscal 2007, Industrial Enterprises of America reported revenue of $41.6 million versus $19.6 million in the same period last year, reflecting the acquisition of Pitt Penn and increased demand for its automotive products. Gross profit was $11.4 million, representing a gross margin of 27.4%, versus $0.9 million, or 4.4%, for the same period in fiscal 2006. EBITDA was $6.8 million, or $0.52 per share. The net loss for the nine month period was $6.7 million, versus a loss of $7.4 million for the first nine months of fiscal 2006.

"We are very pleased with our overall financial results, with EBITDA on target prior to the inventory accounting correction. Revenues were lower than previously guided due to mild weather during the quarter, and a higher than expected number of contract packaging contracts which recognize only processing fees," commented John Mazzuto, Chief Executive Officer of Industrial Enterprises of America. "During the fiscal third quarter,

the company increased unit through-put by approximately 30% through improved operating efficiencies and additional manufacturing shifts. Our order flow continues to outpace shipments, and we will continue to leverage our production capacity and look at opportunistic acquisitions that can improve our asset utilization."

32.    On July 12, 2007, the Company issued a materially false and misleading press release announcing a fourth quarter and year-end update.  The press release states in relevant part:

Industrial Enterprises Provides Fourth Quarter and Year-End Update
Thursday July 12, 3:05 pm ET

Board of Directors Authorizes $25 million Increase to Share Repurchase Program

NEW YORK--(BUSINESS WIRE)--Industrial Enterprises of America, Inc. (NASDAQ: IEAM - News), a specialty automotive aftermarket supplier, today reported preliminary fiscal fourth quarter financial highlights, including positive changes in its capital structure and balance sheet.

As expected, a majority of the Company's $4.6 million in convertible debt was converted into equity at the end of the quarter, and the Company's overall debt was reduced to less than $3 million from greater than $14 million. Additionally, the total number of warrants outstanding fell to fewer than 500,000 from 2 million. The reduction of convertible debentures and warrants outstanding significantly lowers the potential dilution going forward; however, due to the recent conversion of debt into equity, warrants exercised, and the interest and liquidated damages related to such debt paid in stock, the Company's outstanding share count has temporarily increased to approximately 19 million shares of common stock. The current share count also reflects management's near-term decision to use warrant proceeds to pay down debt instead of buy back shares. Shares outstanding does not include shares repurchased in the Company's share repurchase program, via cash or note, shares that are in the process of being cancelled and shares that have been issued but not earned, which would all be reported by the transfer agent as outstanding.

Due to the improved financial strength of the Company's balance sheet, the Board of Directors has voted to increase the existing share buyback program by $25 million dollars in order to minimize the effect of the debt conversions and to keep the share count consistent with management's prior 13-14 million share guidance. This does not include stock that may be issued as part of future acquisitions.

For the fiscal fourth quarter ended June 30, 2007, financial performance is expected to be on par with previously guided earnings estimates of $4.0 million, although such performance is always subject to auditor adjustments. However, revenues are expected to

11

come in lower than anticipated due to a change in product mix, as previously discussed on the Company's third quarter conference call. Additionally, the Company's accounts receivable balance, which had risen sharply in the previous two quarters due to bulk sales, has been subsequently reduced by those amounts as receivables on the bulk sales have been collected. Actual financial results are expected to be reported sometime in late September.

Chief Executive Officer John Mazzuto stated, "Moving into fiscal 2008, our balance sheet is stronger than it has ever been, and the potential dilution to our stockholders has been largely eliminated due to the conversion of debt and exercise of warrants. I feel we have taken the necessary steps to position IEAM for substantial revenue growth and margin expansion going forward, providing a strong return on investment for our stakeholders. Now that our Board of Directors has authorized an increase in our share repurchase program, we will continue to purchase stock at the appropriate times."

33.    On September 4, 2007, the Company issued a press release announcing that Defendant Yepes had been appointed the Company's CFO, replacing Defendant Mazzuto.

## TRUTH BEGINS TO EMERGE

34.    The relevant truth began to enter the market and/or materialize through partial disclosures.  On October 15, 2007, after market close, the Company issued a press release announcing a review of accounting practices.  The press release states in relevant part:

**Industrial Enterprises to Review Accounting Practices**
Monday October 15, 5:05 pm ET

**Company Announces the Closing of New Credit Facility**

NEW YORK, Oct. 15, 2007 (PRIME NEWSWIRE) -- Industrial Enterprises of America, Inc. (NasdaqCM:IEAM - News), today announced that management is currently conducting a review of its accounting practices including a review of its revenue recognition policy regarding ``bill and hold'' transactions.

Industrial Enterprises' management is currently working to determine the most appropriate revenue recognition method to replace its prior ``bill and hold'' practice. A ``bill and hold'' transaction occurs when a company records a sale and gives ownership of the product to the customer, but actual delivery takes place in a later period. While a change in its revenue recognition policy would only affect the timing of recognition of

12

certain revenue, management has determined that its previous policy needs further review. The company will provide updated information once it has completed an in-depth analysis of the most appropriate revenue recognition method.

Additionally, during the year-end review, management has determined that one of its supplier's is a variable interest entity (VIE). A VIE is an entity in which a company has a controlling financial interest. In this specific case, while neither the company nor any of its employees has any financial interest in the vendor, management has determined that because the company is this vendor's sole customer, under GAAP accounting, they are considered a VIE. The Company is reviewing the most appropriate treatment of this VIE, which may include the audit of the financials of the VIE and the consolidation of the financial statements of the VIE into the financial statements of the company.

Management is currently reviewing these changes with its audit committee and its independent auditors. If the revenue recognition policy changes or the VIE's financials need to be consolidated into the company's financials, then the company will need to amend its Quarterly Reports on Form 10-QSB for the quarters ending September 30, 2006, December 31, 2006 and March 31, 2007. Based on the above issues, the company will not be filing its delayed Annual Report on Form 10-KSB for the year ended June 30, 2007 until these matters have been resolved. The company will continue to update on the progress of the filing.

Also, in response to a Comment Letter from the Securities and Exchange Commission, the company will be amending its Annual Report on Form 10-KSB for the fiscal year ended June 30, 2006 to address comments on the accounting treatment on financing transactions with variable conversion prices for that fiscal year. Therefore, investors should not rely on the financial statements contained in the previously filed Annual Report on Form 10-KSB for the year ended June 30, 2006.

Dan Redmond, President and Chief Operating Officer, commented, ``New Chief Financial Officer, Jorge Yepes and I are committed to improving the financial reporting and transparency of the company. Since my arrival in April of this year, Industrial Enterprises has made numerous strides improving manufacturing efficiencies and operational controls. We are dedicated to restoring our financial transparency in the marketplace. I am confident the company has the right people in place to deliver consistent growth and measurable results."

Industrial Enterprises also reports that the company has secured a revolving credit line of $5 million. The credit facility is an asset and receivable backed revolving line of credit and carries interest at LIBOR plus 2.00% or the Prime rate minus 0.25%. Assuming certain conditions are met the credit line will be reviewed for further increases by year end. The credit facility was done through Sovereign Bank.

According to Jorge Yepes, Chief Financial Officer of Industrial Enterprises, ``We are pleased to announce the closing of a new credit facility. The credit facility will provide us greater flexibility in managing our business and funding growth initiatives, and reduces our borrowing cost when compared to our previous credit line. A portion of the credit line will also be utilized to continue the company's previously announced stock buyback program. While we are disappointed that we will not be able to meet our filing extension, we are working diligently to ensure that our financial reports include improved financial disclosures and transparency.''

35.    The October 15, 2007 adverse announcement caused the Company's stock to fall approximately 15% on October 16, 2007, on extremely heavy volume.

36.    On November 7, 2007, after market close, the Company issued an announcement regarding its accounting review.  The announcement states in relevant part:

Industrial Enterprises Provides Accounting Update
Wednesday November 7, 4:49 pm ET

NEW YORK, Nov. 7, 2007 (PRIME NEWSWIRE) -- Industrial Enterprises of America, Inc. (NasdaqCM:IEAM - News) today provided an update on its accounting review for the Company's fiscal year ended June 30, 2007, and made certain other announcements.

During the year-end annual audit, it has come to the Company's attention that a supplier to the Company may be required to be accounted for as a Variable Interest Entity (VIE) due to the fact that the Company is its sole customer. Based upon further evaluation by both the Company and its auditors, the VIE does not appear to be material to the overall operations of the Company and consequently does not appear to require an audit or to be consolidated into the Company's financials. The Company's previous auditors are now reviewing this relationship during the fiscal 2006 time period and are evaluating whether the VIE needs to be consolidated into the Company's fiscal 2006 financials. Company management believe that the auditors will concur with the 2007 accounting treatment of the VIE, but no conclusion has yet been made. Management cautions that the filing of the 2007 Form 10KSB is contingent upon the Company filing the restated 2006 annual report.

Also, during the Company's internal review of its accounting policies, it has determined that its reserve for current litigation should be increased by an additional $9.5 million, to $13.5 million.

Additionally, the Company has determined, after reviewing its bill and hold transactions for fiscal 2007, that the Company did not properly follow GAAP revenue recognition procedures. Therefore, the bill and hold transactions for the quarter ended December 31,

2006 in the amount of approximately $3.1 million will be cancelled, and the bill and hold sales for the quarter ended March 31, 2007 in the amount of $4.9 million will also be cancelled. Such bill and hold sales represented $1.3 million of EBITDA in the quarter ended December 31, 2006 and $3.5 million of EBITDA in the quarter ended March 31, 2007. Also, the bill and hold transactions that were to take place in the 4th quarter have been cancelled. These sales would have accounted for EBITDA in excess of $1.5 million. Based on the cancellation of the fourth quarter bill and hold sales, the EBITDA guidance for the quarter is no longer applicable. Of the total cancelled bill and hold revenue, $1.6 million will be reflected in the first quarter of 2008 representing $1.1 million in EBITDA and $1.2 million in revenue will be recorded in the second quarter of 2008 representing EBITDA of approximately $400,000. The margins on these sales were unusual because the Company was able to sell finished goods inventory that the Company had purchased at distress prices. It is expected that the Company's customers will continue to execute bulk transactions in the future; however, the margins from the previous bill and hold transactions are not sustainable.

All bill and hold purchases were paid in full, and cash was received prior to June 30, 2007, but because the buyers were unable to take delivery of their merchandise, the Company was forced to cancel these transactions and will reflect an approximate $8 million in liabilities on its books at the year ended June 30, 2007. The buyers of the bulk purchases have agreed to settle their potential claims for these cancelled sales for 2.4 million shares of restricted stock and the above purchase and delivery of product. This settlement will remove the liability during the second quarter ended December 31, 2007. Additionally, Industrial Enterprises has the option to repurchase these shares at current market prices.

\*    \*    \*    \*

Also, during the year end annual audit, it was determined that certain litigation expenses paid by the Company's CEO John Mazzuto, in defense of litigation against the Company and Mr. Mazzuto personally, were not recorded as an expense by the Company and that such expenses should be reimbursed to Mr. Mazzuto. The Company and its auditors have determined that such payments should have been recorded as an expense by the Company and reflect a liability to repay Mr. Mazzuto approximately $1.2 million. Mr. Mazzuto has agreed to accept 500,000 shares of restricted stock as settlement for these paid legal expenses.

\*    \*    \*    \*

According to CEO John Mazzuto, ``We take our responsibility to provide complete and accurate financial information seriously and are taking proactive steps that we believe are appropriate under these circumstances. Given the current price of the Company's common stock, the Company will add additional debt over and above the $10 million recently added, to increase the pace of the share buyback as well as to expand operations.''

37.    Later that day it was announced that defendant Yepes was being suspended by the Company effective November 6, 2007, in connection with an internal integrity review.

38.    The November 7, 2007 adverse announcements caused the Company's stock to lose over half of its value on November 8, 2007, from a closing price of $2.19 per share on November 7 to a closing price of $.80.

39.    Had the Plaintiff and the Class been aware of this adverse information they would not have purchased the Company's securities at all or would not have purchased such securities at the artificially inflated prices at which they did.

### Applicability of Presumption of Reliance:
### Fraud-on-the-Market Doctrine

40.    At all relevant times, the market for IEAM's common stock was an efficient market for the following reasons, among others:

(a)    IEAM's stock met the requirements for listing, and was listed and actively traded on the NASDAQ Capital Market and Bulletin Board, highly efficient and automated markets;

(b)    During the class period, on average, several hundreds of thousands of shares of IEAM stock were traded on a weekly basis, demonstrating a very active and broad market for IEAM stock and permitting a *very strong* presumption of an efficient market;

(c)    As a regulated issuer, IEAM filed with the SEC periodic public reports during the Class Period;

(d)    IEAM regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national

circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)     IEAM was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f)     Numerous NASD member firms were active market-makers in IEAM stock at all times during the Class Period; and

(g)     Unexpected material news about IEAM was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

41.     As a result of the foregoing, the market for IEAM's common stock promptly digested current information regarding IEAM from all publicly available sources and reflected such information in IEAM's stock price. Under these circumstances, all purchasers of IEAM's common stock during the Class Period suffered similar injury through their purchase of IEAM's common stock at artificially inflated prices, and a presumption of reliance applies.

## NO SAFE HARBOR

42.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the

statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of IEAM who knew that those statements were false when made.

### FIRST CLAIM
### Violation of Section 10(b) Of
### The Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

43.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase IEAM's common stock at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

45.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for IEAM's common stock in violation of Section 10(b) of the Exchange Act and Rule

10b-5 thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of IEAM as specified herein.

47.    These Defendants employed devices, schemes and artifices to defraud while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of IEAM's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about IEAM and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaging in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of IEAM's common stock during the Class Period.

48.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other Defendants and was

19

advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination to the investing public of information that they knew or recklessly disregarded to be materially false and misleading.

49.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing from the investing public IEAM's operating condition and future business prospects and supporting the artificially inflated price of its common stock.  As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

50.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of IEAM's common stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of IEAM's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during

the Class Period, Plaintiff and the other members of the Class acquired IEAM common stock during the Class Period at artificially high prices and were or will be damaged thereby.

51.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding IEAM's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their IEAM common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

52.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

53.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

54.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

55.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

21

56. The Individual Defendants acted as controlling persons of IEAM within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

57. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58. As set forth above, IEAM and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

59. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

60.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

<u>**JURY TRIAL DEMANDED**</u>

Plaintiff hereby demands a trial by jury.

Dated: November 14, 2007                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim, Esq.  (PK 9384)
Laurence Rosen, Esq. (LR 5733)
350 Fifth Avenue, Suite 5508
New York, NY  10118
Phone: (212) 686-1060
Fax: (212) 202-3827

Counsel for Plaintiff

23

Print Message                                                    Close this window

**From** postmaster@rosenlegal.com
**Date** 2007/11/12 Mon AM 11:14:14 CST
**To** rosenlegal@verizon.net
**Subject** Confirmation of Receipt of Certification

Dear annmarie mallozzi,

We have received your certification in the Industrial Enterprise of America, Inc. class action litigation. Thank you for submitting your information. Below is a copy of your certification - please retain it for your records. If you have any questions, please feel free to contact us at 1-866-rosenlegal (866-767-3653) or via e-mail at info@rosenlegal.com.

With increasing frequency, we find that our new clients were victimized by more than one company. If you think you may have lost monies in the market due to the dishonest acts or statements of a different company and would like it to be investigated, free of charge, please email us at reportfraud@rosenlegal.com.

Sincerely,

The Rosen Law Firm P.A.

--------

CERTIFICATION

Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Industrial Enterprise of America, Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Industrial Enterprise of America, Inc. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

First name: annmarie

Last name: mallozzi

Address:

City:

State, Zip:

Email:

Phone:

The Plaintiff Certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Shares Purchased:

Purchase Date(s): 5/22/07
Number of shares: 500
Price per Share: 5

Shares Sold:

7. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except if detailed below:

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate: yes

By clicking on the button below, I intend to sign and execute this agreement: yes

Clicked to Submit Certification in the Industrial Enterprise of America, Inc. Action

Signed pursuant to California Civil Code Section 1633.1, et seq. - Uniform Electronic Transactions Act

-------------

Confidential Information

The information in this e-mail message is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (866-767-3653) and return the original message to the above e-mail address. Thank you.

-------------