**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANNMARIE MALLOZZI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> v. <br><br> INDUSTRIAL ENTERPRISES OF AMERICA, INC.; JOHN MAZZUTO; JORGE YEPES; DENNIS O'NEILL; and JAMES MARGULIES, <br><br> Defendants. | C.A. No: 07-10321 <br><br> CLASS ACTION <br><br> <u>JURY TRIAL DEMANDED</u> |

## <u>NOTICE OF MOTION</u>

**PLEASE TAKE NOTICE,** that upon the annexed Declaration of Gregory M. Nespole, Memorandum of Law, and Proposed Order, Ron Goldenberg and Carl Haeussler (collectively the "Goldenberg Group") will move this Court located at the United States Courthouse, 500 Pearl Street, Room 15D, New York, New York 10007 on January 15, 2008, or as soon thereafter as counsel may be heard for an Order pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act") and 27(a)(3)(B) of the Securities Act of 1933, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for its appointment to serve as Lead Plaintiff on behalf of all persons who purchased Industrial Enterprises of America, Inc. common stock between November 14, 2006, and November 8, 2007, inclusive, seeking to pursue remedies under the Exchange Act and Rule 10b-5, promulgated thereunder (the "Class"); and for

the approval of its choice of Wolf Haldenstein Adler Freeman & Herz LLP and Donovan Searles, LLC as Co-Lead Counsel.

**PLEASE TAKE FURTHER NOTICE,** that the Goldenberg Group, as the proposed Lead Plaintiff for the Class, has timely filed its motion and, pursuant to the PSLRA, is believed to constitute the investor with the largest financial interest in the outcome of the case for the Class, and is otherwise the most adequate lead plaintiff. The Goldenberg Group satisfies the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the Class, and it will fairly and adequately represent the interests of the Class. The Goldenberg Group's choice of counsel should be accepted by this Court because its selected counsel are both nationally recognized firms with extensive experience and expertise in securities fraud and other class actions.

Dated: January 15, 2008
      New York, New York

                         Respectfully submitted,

                         **WOLF HALDENSTEIN ADLER**
                         **FREEMAN & HERZ LLP**

                         By:
                         Gregory M. Nespole (GN-6820)
                         Mark Rifkin (MR-0904)
                         Rachel S. Poplock (RP-3782)
                         270 Madison Avenue
                         New York, New York 10016
                         Telephone: (212) 545-4600
                         Facsimile: (212) 545-4653

                         **DONOVAN SEARLES, LLC**
                         Michael D. Donovan
                         1845 Walnut Street, Suite 1100
                         Philadelphia, PA 19103
                         Telephone: (215) 732-6067

                         **Proposed Co-Lead Counsel**

498609

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANNMARIE MALLOZZI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, )))) | |
| )))) Plaintiff, | C.A. No: 07-10321 |
| )) | |
| v. ) | |
| ) | CLASS ACTION |
| INDUSTRIAL ENTERPRISES OF AMERICA, INC.; JOHN MAZZUTO; JORGE YEPES; DENNIS O'NEILL; and JAMES MARGULIES, ))))) | <u>JURY TRIAL DEMANDED</u> |
| )) | |
| Defendants. )) | |

**MEMORANDUM OF LAW BY THE GOLDENBERG GROUP**
**FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR**
**<u>APPROVAL OF ITS SELECTION OF CO-LEAD COUNSEL</u>**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

INTRODUCTION .............................................................................................................. 1

PROCEDURAL BACKGROUND...................................................................................... 1

FACTUAL ALLEGATIONS ............................................................................................. 2

I.    THE GOLDENBERG GROUP SHOULD BE APPOINTED LEAD PLAINTIFF ........... 3

    A.    The Procedures Mandated by the PSLRA ..................................................... 3

    B.    The Goldenberg Group Satisfies the "Lead Plaintiff" Requirements of the PSLRA.......................................................................... 5

        1.    The Goldenberg Group Complied with the PSLRA .................................5

        2.    The Goldenberg Group Has A Substantial Financial Interest In The Relief Sought By The Class .................................5

        3.    The Goldenberg Group Satisfies The Requirements Of Rule 23 Of The Federal Rules Of Civil Procedure................................7

        4.    The Goldenberg Group's Claims Are Typical Of The Claims Of The Class ................................7

        5.    The Goldenberg Group Will Fairly And Adequately Represent The Interests Of The Class.........................9

II.    THIS COURT SHOULD APPROVE THE GOLDENBERG GROUP'S CHOICE OF LEAD COUNSEL ................................................................. 10

III.    CONCLUSION............................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                              **<u>PAGE(S)</u>**

*In re AMF Bowling Securities Litigation,*
    No. 99 Civ. 3023, 2002 U.S. Dist. LEXIS 4949 (S.D.N.Y. Mar. 25, 2002)................................8

*Bassin v. Decode Genetics, Inc.,*
    230 F.R.D. 313 (S.D.N.Y. 2005) ................................................................................................6

*Bishop v. New York City Department of Housing Preservation and Development,*
    141 F.R.D. 229 (S.D.N.Y. 1992) ................................................................................................8

*In re Cephalon Securities Litigation,*
    No. Civ. A. 96-0633, 1998 WL 470160 (E.D. Pa. Aug. 12, 1998)...............................................5

*In re Drexel Burnham Lambert Group, Inc.,*
    960 F.2d 285 (2d Cir. 1992),
    *cert. dismissed,* 506 U.S. 1088 (1993) .......................................................................................8

*Ferrari v. Impath,*
    03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004) ....................6, 7

*Fischler v. Amsouth Bancorporation,*
    96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 6, 1997).........................7, 8

*Greebel v. FTP Software,*
    939 F. Supp. 57 (D. Mass. 1996) ............................................................................................4, 5

*In re Kirschner Medical Corp. Securities Litigation,*
    139 F.R.D. 74 (D. Md. 1991)....................................................................................................8, 9

*Lax v. First Merchants Acceptance Corp.,*
    97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997)................................7, 10

*Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.,*
    229 F.R.D. 395 (S.D.N.Y. 2004) ................................................................................................6

*Sczesny Trust v. KPMG LLP,*
    223 F.R.D. 319 (S.D.N.Y. 2004) ................................................................................................6

*Simpson v. Specialty Retail Concepts, Inc.,*
    149 F.R.D. 94 (M.D.N.C. 1993) .................................................................................................9

*In re Sumitomo Copper Litigation*,
   182 F.R.D. 85 (S.D.N.Y. 1998) ............................................................................8

*In re Sumitomo Copper Litigation*,
   194 F.R.D. 480 (S.D.N.Y 2000) ...........................................................................8

*Zaltzman v. Manugistics Group, Inc.*,
   S-98-1881, 1998 U.S. Dist. LEXIS 22867 (D. Md. Oct. 8, 1998)..................................8

## STATUTES AND RULES

Federal Rules of Civil Procedure
   Rule 23 ...............................................................................................7, 8, 9

17 C.F.R. § 240.10b-5 (Rule 10b-5) ..........................................................................1

Securities Exchange Act
   15 U.S.C. § 78j(b)...................................................................................................1
   15 U.S.C. § 78t(a) ..................................................................................................2
   15 U.S.C. § 78u-4 ..................................................................................................1
   15 U.S.C. § 78u-4(a)(1) ..........................................................................................4
   15 U.S.C. § 78u-4(a)(3)(A).......................................................................................4
   15 U.S.C. § 78u-4(a)(3)(B) ............................................................................. *passim*

## PRELIMINARY STATEMENT

Ron Goldenberg ("Goldenberg") and Carl Haeussler ("Haeussler" and collectively the "Goldenberg Group"), investors who suffered losses of $47,861.00 from their purchases of common stock of Industrial Enterprises of America, Inc. ("IEAM"), respectfully move for appointment as lead plaintiff, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4, and for approval of the Goldenberg Group's selection of the firms of Wolf Haldenstein Adler Freeman & Herz LLP and Donovan Searles, LLC as Co-Lead Counsel.

## INTRODUCTION

Pending before this Court is a class action lawsuit by a purchaser of IEAM common stock against the Company, and certain of its senior officers, alleging violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), SEC Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act. This action alleges, as described in more detail below, that IEAM misrepresented its financial condition during the relevant Class Period.

As discussed below, the Goldenberg Group has a substantial financial interest in the outcome of the litigation. In addition, it satisfies each of the requirements of the PSLRA and, therefore, is qualified for appointment as lead plaintiff in this action. The Goldenberg Group also seeks Court approval of its selection of Co-Lead Counsel. These firms are experienced and nationally recognized securities litigation firms that will zealously advance the interests of the Class in this litigation.

## PROCEDURAL BACKGROUND

On November 14, 2007, AnnMarie Mallozzi filed a complaint against IEAM. The lawsuit was brought as a class action on behalf of all persons and entities, other than defendants,

who purchased IEAM common stock between November 14, 2006 and November 8, 2007, and

sustained a loss thereby (the "Class" and "Class Period", respectively), to recover damages

caused to plaintiffs and the Class by defendants' violations of the federal securities laws.

Defendants include IEAM, John Mazzuto, Jorge Yepes, Dennis O'Neill and James Margulies.[1]

In accordance with the PSLRA, the Goldenberg Group moves to be appointed lead plaintiff and

to have Wolf Haldenstein Adler Freeman & Herz LLP and Donovan Searles, LLC appointed as

Co-Lead Counsel.

## FACTUAL ALLEGATIONS

Defendant IEAM is a Nevada corporation with its principle executive offices in New

York. The Company claims to be a leading automotive aftermarket supplier that specializes in

the sale of high quality automotive chemicals and motor oils. Through its wholly owned

subsidiaries, IEAM, specializes in producing "Value Brands" within the automotive aftermarket.

These value products include motor oil, antifreeze, washer and brake fluids, lighter fluid and

automotive additives and chemicals as well as refrigerant kits and fire suppressants. The

company services customers in both the wholesale and retail channels, including warehouse

distributors and auto supply companies, as well as major national retailers.

The truth about the IEAM's actual state of affairs began to emerge on October 15, 2007

when it announced a review of its accounting practices and a delay in the filing of its Annual

Report on Form 10-QSB for the fiscal year ended June 30, 2007. This announcement caused the

Company's stock to fall approximately 15% on extremely heavy volume. On November 7,

2007, the last day of the Class Period, the Company announced that its internal accounting

---

[1] This factual summary is taken largely from the Complaint filed by The Rosen Law Firm, P.A.
Haeussler has not yet filed a Complaint. The PSLRA permits Class Members who have not filed
Complaints to seek appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa). Haeussler intends
to file an Amended Complaint if he is appointed lead plaintiff.

review indicated that it was not in compliance with Generally Accepted Accounting Principles ("GAAP"). IEAM stated that it would restate its 2006 annual results and its 2007 results would be delayed until the restatement of the Company's 2006 results could be completed. This shocking announcement was followed by another announcement that defendant Yepes was suspended in connection with an internal integrity review. On this news, IEAM's stock price lost over half its value and fell from its November 7, 2007 price of $2.19 to just $0.80 the following day.

Throughout the Class Period defendants issued a series of misleading financial statements and reports with the SEC that described the IEAM's alleged financial performance. These public statements were materially false and misleading because they misrepresented the company's financial performance and failed to disclose that the Company was not using accounting practices that were in compliance with GAAP. As a result of the foregoing, the Company overstated its financial results and concealed from the investing public, including the Goldenberg Group and other members of the Class, the true nature of the undisclosed accounting problems facing the IEAM.

## I.    THE GOLDENBERG GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A.    The Procedures Mandated by the PSLRA

The PSLRA has established a procedure that governs the appointment of lead plaintiffs in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, the first notice was published on the *Market Wire*, an appropriate wire service, on November 16, 2007. This satisfies the PSLRA's

initial notice of pendency requirement. *Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996). A copy of this notice is attached as Exhibit 1 to the Declaration of Gregory Nespole hereto, (the "Nespole Declaration").

Second, within sixty days after the publication of the notice mandated by the PSLRA, any person who is a member of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not he has previously filed a complaint in the action. 15 U.S.C § 78u-4(a)(3)(A) and (B). Thus, motions for the appointment of lead plaintiff are due on January 15, 2008, sixty days from the date of the publication of the notice. The Goldenberg Group filed this motion within the statutory period.

Third, the PSLRA provides that within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of the class members, 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiffs," the Act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
>     (aa)    has either filed the complaint or made a motion in response to a notice ...
>
>     (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>     (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See, generally, Greebel*, 939 F. Supp. at 64; *In re Cephalon Sec. Litig.*, No. Civ. A. 96-0633, 1998 WL 470160, at *5 (E.D. Pa. Aug. 12, 1998).

**B.    The Goldenberg Group Satisfies the "Lead Plaintiff"
Requirements of the PSLRA**

**1.    The Goldenberg Group Complied with the PSLRA**

Pursuant to the PSLRA, the Goldenberg Group has timely moved to be appointed lead

plaintiff.  The members of the Goldenberg Group have each signed a certification authorizing

this litigation, stating that they are willing to serve as Class representatives and setting forth all

of their transactions in IEAM common stock. *See* Nespole Decl. Exs. 3 and 4.  Here, similar to

all Class Members, the members of the Goldenberg Group relied on the integrity of the market to

reflect the representations of IEAM's management, including the defendants in this case, when

they made investment decisions.  As described on the certifications, the Goldenberg Group's

losses on this transaction are estimated at $47,861.00.

The Goldenberg Group satisfies each of the prerequisites for appointment as lead plaintiff

pursuant to Section 21D(a)(3)(B) and is entitled to have its application for appointment as lead

plaintiff and selection of counsel, as set forth herein, considered and approved by the court.

**2.    The Goldenberg Group Has A Substantial
Financial Interest In The Relief Sought By The Class**

To counsel's knowledge, the Goldenberg Group possesses the largest financial interest in

the outcome of this litigation and, may therefore be presumed to be the "most adequate plaintiff."

15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(I)(bb).

One of the key factors in the selection of lead plaintiffs under the PSLRA is the court's

determination as to which persons have the largest financial interests in the relief sought by the

class.  The "most adequate plaintiff" provision of the PSLRA provides that a court:

> shall appoint as lead plaintiffs *the member or members of the*
> *purported plaintiff class* that the court determines to be most
> capable of adequately representing the interests of class members
> (hereafter in this paragraph referred to as the "most adequate

5

plaintiffs'") in accordance with this subparagraph. (emphasis added).

§ 21D(a)(3)(B)(i). "In light of the PSLRA's silence in prescribing a method for assessing a movant's financial interest, courts have examined several factors such as: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 316 (S.D.N.Y. 2005) (Holwell, J.). *See also Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (quoting *Lax v. First Merchants Acceptance Corp.*, 97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 11, 1997)); *Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004); *Ferrari v. Impath*, 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *16 (S.D.N.Y. July 15, 2004).

During the Class Period, as evidenced by the accompanying signed certification, the Goldenberg Group suffered $47,861.00 in losses as a result of Defendants' misconduct. The Goldenberg Group therefore has the most significant financial interest in this case.[2] The Goldenberg Group has not received notice of any other applicant or applicant group that has sustained greater financial losses in connection with the purchase and/or sale of the Company's common stock. Accordingly, the Goldenberg Group satisfies the prerequisites for appointment as lead plaintiff under Section 21D(a)(3)(B).

---

[2] It is well established in this judicial district that the presumptive Lead Plaintiff is the movant with the largest financial interest in the litigation. *See Ferrari*, 2004 U.S. Dist. LEXIS 13898 (Group with largest financial interest in the Class appointed Lead Plaintiff.)

### 3.    The Goldenberg Group Satisfies The Requirements Of Rule 23 Of The Federal Rules Of Civil Procedure

Section 21D(a)(3)(B) of the Exchange Act further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiffs must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the proposed class representative. Consequently, in deciding a motion to appoint lead plaintiffs, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the plaintiffs move for class certification. *Lax*, 1997 U.S. Dist. LEXIS 11866, at *20; *Fischler v. Amsouth Bancorporation*, 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997); *Zaltzman v. Manugistics Group, Inc.*, S-98-1881, 1998 U.S. Dist. LEXIS 22867, at *20 (D. Md. Oct. 8, 1998). As detailed below, the Goldenberg Group satisfies the typicality and adequacy requirements of Rule 23.

### 4.    The Goldenberg Group's Claims Are Typical Of The Claims Of The Class

Generally, the typicality requirement is satisfied if the claims or defenses of the representative parties are typical of the claims or defenses of the class. *See, In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088

7

(1993); *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78-79 (D. Md. 1991). Typicality exists if claims "arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *See In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023, 2002 U.S. Dist. LEXIS 4949, at *12-13 (S.D.N.Y. Mar. 25, 2002); *In re Sumitomo Copper Litig.*, 194 F.R.D. 480, 482 (S.D.N.Y. 2000). However, the claims of the class representative need not be identical to the claims of the class to satisfy typicality. *See In re AMF Bowling Sec. Litig.*, *supra*. Instead, the courts have recognized that:

> [T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.

*Bishop v. New York City Dep't of Hous. Pres. and Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992). *See also In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 92 (S.D.N.Y. 1998) (Noting that "[i]t is settled in this Circuit that factual differences in the amount of damages, date, size or manner of purchase, the type of purchaser, the presence of both purchasers and sellers, and other such concerns will not defeat class action certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class.")

The Goldenberg Group satisfies this requirement because, like all other class members, its members: (1) purchased IEAM's common stock during the Class Period; (2) at prices alleged artificially inflated by the false and misleading statements issued by defendants or by defendants' failure to disclose material information; and (3) suffered damages thereby. Thus, its claims are typical of those of other class members since its claims and the claims of the other Class members arise out of the same course of events. Because the Goldenberg Group seeks to prove that its claims arise "from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory," the typicality requirement of Rule

23(a)(3) is satisfied. *Simpson v. Specialty Retail Concepts, Inc.*, 149 F.R.D. 94, 99 (M.D.N.C. 1993).

**5.    The Goldenberg Group Will Fairly And
Adequately Represent The Interests Of The Class**

Under Rule 23(a)(4), a representative party must fairly and adequately protect the interests of the class. This requirement is met if it appears that (1) the named plaintiffs have interests in common with, and not antagonistic to, the class' interests; and (2) the plaintiffs' attorneys are qualified, experienced and generally able to conduct the litigation. *See, e.g.*, *Simpson*, 149 F.R.D. at 102; *Kirschner*, 139 F.R.D. at 79.

The Goldenberg Group is an adequate representative of the Class. The PSLRA directs this Court to limit its inquiry regarding the adequacy of a proposed lead plaintiff to represent the Class to the existence of any conflicts between the interests of the proposed lead plaintiff and the members of the Class, and then allow the lead plaintiffs to retain lead counsel to represent the Class, "subject to the approval of the court." *See*, 15 U.S.C. § 78u-4(a)(3)(B)(v). As evidenced by the injuries suffered by the Goldenberg Group, its interests are clearly aligned with the members of the Class, and there is no evidence of any antagonism between the interests of the Goldenberg Group and the Class. Further, the Goldenberg Group has selected law firms to represent it and the Class that are highly experienced in prosecuting securities class actions such as this one.

The Goldenberg Group, therefore, satisfies all of the PSLRA's prerequisites and the practice of this judicial district for appointment as Lead Plaintiff and should be appointed as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B), of a class consisting of all persons that purchased IEAM common stock from November 14, 2006 through November 8, 2007.

9

## II.    THIS COURT SHOULD APPROVE THE GOLDENBERG GROUP'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff, subject to court approval, to select and retain lead counsel. *See*, 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also, e.g., Lax*, 1997 U.S. Dist. LEXIS 11866. Thus, the Court should not disturb the proposed lead plaintiff's choice of counsel unless necessary to "protect the interests of the [plaintiff] class." 15 U.S.C. § 78u-4(a)(3)(B) (iii)(II)(aa). The proposed Co-Lead counsel, Wolf Haldenstein Adler Freeman & Herz LLP and Donovan Searles, LLC, possess extensive experience in the area of securities litigation and have successfully prosecuted numerous securities fraud actions on behalf of injured investors in this and other Courts throughout the country. *See Nespole Decl. Exs. 5 and 6*. Thus, the Court may be assured that, in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available.

## III.    CONCLUSION

For all the foregoing reasons, the Goldenberg Group respectfully requests that the Court appoint it as lead plaintiff under Section 21D(a)(3)(B). It further requests that the Court approve its choice of Wolf Haldenstein Adler Freeman & Herz LLP and Donovan Searles, LLC as Co-Lead Counsel.

Dated: January 15, 2008

Respectfully submitted,

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

By: _____
Gregory M. Nespole (GN-6820)
Mark Rifkin (MR-0904)
Rachel S. Poplock (RP-3782)
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

**DONOVAN SEARLES, LLC**
Michael D. Donovan
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 732-6067

**Proposed Co-Lead Counsel**

498391.2

11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANNMARIE MALLOZZI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>               Plaintiff,<br><br>v.<br><br>INDUSTRIAL ENTERPRISES OF AMERICA, INC.; JOHN MAZZUTO; JORGE YEPES; DENNIS O'NEILL; and JAMES MARGULIES,<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No: 07-10321<br><br>   CLASS ACTION<br><br>   <u>JURY TRIAL DEMANDED</u> |

## DECLARATION OF GREGORY M. NESPOLE, ESQ. IN SUPPORT OF THE GOLDENBERG GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF CO-LEAD COUNSEL

I, Gregory M. Nespole, hereby declare:

1.     I am a partner of the law firm of Wolf Haldenstein Adler Freeman & Herz LLP.  I submit this Declaration in support of the Goldenberg Group's motion for appointment as Lead Plaintiff, and approval of its selection of Wolf Haldenstein Adler Freeman & Herz LLP and Donovan Searles, LLC as Co-Lead Counsel.

2.     Attached hereto as Exhibit 1 is a true and correct copy of the notice of pendency of a class action published via *Market Wire* on November 16, 2007.

3.     Attached hereto as Exhibit 2 is a true and correct copy of the complaint styled *Mallozzi v. Industrial Enterprises of America, Inc. et. al.*, Case No. 07-cv-10321.

4.     Attached hereto as Exhibit 3 is Ron Goldenberg's signed affidavit which demonstrates his class standing and requisite financial interest in the outcome of the litigation.

5.    Attached hereto as Exhibit 4 is Carl Haeussler's signed affidavit which demonstrates his class standing and requisite financial interest in the outcome of the litigation.

6.    Attached hereto as Exhibit 5 is a true and correct copy of the firm resume of Wolf Haldenstein Adler Freeman & Herz LLP.

7.    Attached hereto as Exhibit 6 is a true and correct copy of the firm resume of Donovan Searles, LLC.

8.    Attached hereto as Exhibit 7 is a true and correct copy of the [Proposed] Order Appointing Lead Plaintiff and Approving its Selection of Co-Lead Counsel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED:    January 15, 2008
          New York, New York.

                                        Gregory M. Nespole

/498599

# EXHIBIT 1

Yahoo! My Yahoo! Mail    Make Y! your home page    Search: [_____]    **Web Search**

**YAHOO!** FINANCE    **Sign In**
                      New User? Sign Up    Finance Home - Help    marketwire

**Welcome** [Sign In]                                    To track stocks & more, Register

## Financial News

Enter symbol(s) [_____]  [Basic ▾]  Get  Symbol Lookup

**Press Release**                                        Source: Rosen Law Firm PA

# The Rosen Law Firm Files Securities Class Action Charging Industrial Enterprises of America, Inc. With Violations of the Federal Securities Laws -- IEAM

Friday November 16, 8:30 pm ET

NEW YORK, NY--(MARKET WIRE)--Nov 16, 2007 -- The Rosen Law Firm today announced that it has filed a class action lawsuit on behalf of all purchasers of Industrial Enterprises of America, Inc. ("IEAM" or the "Company") (NasdaqCM:IEAM - News) (formerly IEAM.OB) stock during the period from November 14, 2006 through November 8, 2007 (the "Class Period").

To join the IEAM class action, go to the website at http://www.rosenlegal.com or call Laurence Rosen, Esq. or Phillip Kim, Esq. toll-free at 866-767-3653 or email lrosen@rosenlegal.com or pkim@rosenlegal.com for information on the class action.

NO CLASS HAS YET BEEN CERTIFIED IN THE ABOVE ACTION. UNTIL A CLASS IS CERTIFIED, YOU ARE NOT REPRESENTED BY COUNSEL UNLESS YOU RETAIN ONE. YOU MAY ALSO REMAIN AN ABSENT CLASS MEMBER.

The case is pending in the United States District Court for the Southern District of New York as case no. 07-CV-10321. You can obtain a copy of the complaint from the clerk of court or you may contact counsel for plaintiffs Laurence Rosen, Esq. or Phillip Kim, Esq. toll-free at 866-767-3653 or email lrosen@rosenlegal.com or pkim@rosenlegal.com.

The complaint charges that IEAM and certain of its present and former officers, directors, and control persons violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by issuing materially false and misleading statements pertaining to IEAM's business prospects and condition, and filing financial statements with the SEC materially false financial statements.

On November 7, 2007 the Company announced that investors could no longer rely on its historical financial statements and that the Company had not properly followed generally accepted accounting principles, necessitating a revision of reported revenue, among other things. The Company also announced that it had suspended its CFO pending a review. As a result of these events, the Complaint asserts that the price of IEAM stock dropped, damaging investors.

A class action lawsuit has already been filed on behalf of IEAM shareholders. If you wish to serve as lead plaintiff, you must move the Court no later than January 15, 2008. If you wish to join the litigation or to discuss your rights or interests regarding this class action, please contact plaintiff's counsel, Laurence Rosen, Esq. or Phillip Kim, Esq. of The Rosen Law Firm toll free at 866-767-3653 or via e-mail at lrosen@rosenlegal.com or pkim@rosenlegal.com.

The Rosen Law Firm has expertise in prosecuting investor securities litigation and extensive experience in actions involving financial fraud. The Rosen Law Firm represents investors throughout the nation, concentrating its practice in securities class actions.

*Contact:*

```
    Contact:
    Laurence Rosen, Esq.
    Email Contact
    Phillip Kim, Esq.
    Email Contact
    The Rosen Law Firm P.A.
    Tel: (212) 686-1060
```

```
Toll Free: 1-866--767-3653
Fax: (212) 202-3827
http://www.rosenlegal.com
```

Source: Rosen Law Firm PA

Copyright © 2008 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Send Feedback
Copyright © 2008 Marketwire. All rights reserved. All the news releases provided by Marketwire are copyrighted. Any forms of copying other than an individual user's personal reference without express written permission is prohibited. Further distribution of these materials is strictly forbidden, including but not limited to, posting, emailing, faxing, archiving in a public database, redistributing via a computer network or in a printed form.

# EXHIBIT 2

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827

07 CV 10321

NOV 1 4 2007
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANNMARIE MALLOZZI, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

               Plaintiff,

        vs.

INDUSTRIAL ENTERPRISES OF AMERICA, INC.;
JOHN MAZZUTO; JORGE YEPES; DENNIS
O'NEILL; and JAMES MARGULIES,

               Defendants.

------------------------------------------------------------X

CASE No.:

CLASS ACTION COMPLAINT

**JURY TRIAL DEMANDED**

      Plaintiff, Annmarie Mallozzi individually and on behalf of all other persons similarly

situated, by her undersigned attorneys, for her complaint against defendants, alleges the following

based upon personal knowledge as to herself and her own acts, and information and belief as to all

other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys,

which included, among other things, a review of defendants' public documents, conference calls and

announcements made by defendants, United States Securities and Exchange Commission ("SEC")

filings, wire and press releases published by and regarding Industrial Enterprise of America, Inc.

1

("IEAM", or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased the common stock of IEAM between November 14, 2006 through November 8, 2007 (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.    This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b), as a substantial part of the conduct complained of herein occurred in this District.

5.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

2

### PARTIES

6.      Plaintiff Annmarie Mallozzi, as set forth in the accompanying certification, incorporated by reference herein, purchased IEAM securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant IEAM is a Nevada Corporation with its principal executive offices located at 711 Third Avenue, Suite 1505, New York, New York 10017. IEAM is an automotive aftermarket supplier of anti-freeze, motor oil and other chemical products used in the automotive industry. From the beginning of the Class Period to April 23, 2007, the Company's common stock was listed on the NASDAQ Bulletin Board under ticker "IEAM.OB". All relevant times thereafter, the Company's common stock was listed on NASDAQ Capital Market under ticker "IEAM".

8.      Defendant John Mazzuto ("Mazzuto") at all relevant times herein was the Company's Chairman, Director, and Chief Executive. As alleged herein, Mazzuto also served as the Company's CFO from December 2006 to March 19, 2007, and from May 2007 to September 2007.

9.      Defendant Jorge Yepes ("Yepes") at all relevant times herein was the Company's CFO since being appointed to that position on or about September 4, 2007.

10.      Defendant Dennis O'Neill ("O'Neill") was the Company's CFO from March 19, 2007, to May 2007.

11.      Defendant James Margulies ("Margulies") was the Company's CFO from the beginning of the Class Period to approximately December 2006.

12.      Mazzuto, Yepes, O'Neill and Margulies are collectively referred to hereinafter as the "Individual Defendants."

3

13.    During the Class Period, each of the Individual Defendants, as senior executive officers, agents, and/or directors of IEAM and its subsidiaries and affiliates, was privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

14.    Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.

15.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that dissemination of the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein is the result of collective actions of the narrowly defined group of defendants identified above.  Each of the above officers and directors of IEAM and its subsidiaries and affiliates, by virtue of his position with the Company, directly participated in the management of the Company, was directly involved in the day-

4

to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements regarding the Company were being issued, and approved or ratified these statements, in violation of the federal securities laws.

16.    As officers, directors and controlling persons of a publicly-held company whose securities were and are registered with the SEC pursuant to the Exchange Act, and that was traded on the NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

17.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with IEAM, each of the Individual

Defendants had access to the adverse undisclosed information about IEAM's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about IEAM and its business, and issued or adopted by the Company, materially false and misleading.

18.    The Individual Defendants, because of their positions of control and authority as officers, directors, agents, and/or controlling persons of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or to cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and press releases detailed herein and is therefore primarily liable for the representations contained therein.

19.    Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of IEAM securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme (i) deceived the investing public regarding IEAM's business, operations, management and the intrinsic value of IEAM's securities; and (ii) caused Plaintiff and other members of the Class to purchase IEAM securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

20.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons who purchased the common stock of IEAM during the Class Period and who were damaged thereby. Excluded from the Class

are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, IEAM's securities were actively traded on the NASDAQ Bulletin Board. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.  Members of the Class may be identified from records maintained by IEAM or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

22.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

23.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

24.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)  whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)  whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of IEAM; and

(c)  to what extent the members of the Class have sustained damages and the proper measure of damages.

25.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

26.    The Class Period begins on November 14, 2006, when the Company filed with the SEC its annual report for the fiscal year ended June 30, 2006, on Form 10-KSB. The Form 10-KSB was signed and certified by both Defendant Mazzuto and Defendant Margulies, and each separately certified the Form pursuant to the Sarbanes-Oxley Act of 2002 ("SOX").

27.    On February 16, 2007, the Company issued a materially false and misleading press release announcing its results for the second quarter ended December 31, 2006. The announcement states in relevant part:

**Industrial Enterprises of America Reports Second Quarter Revenue of $17 Million**
Friday February 16, 8:00 am ET
NEW YORK--(BUSINESS WIRE)--Industrial Enterprises of America, Inc. (OTC BB:IEAM - News), a specialty automotive aftermarket supplier, today announced results for the fiscal second quarter and six months ended December 31, 2006.

Revenue for the second quarter was a record $17.0 million as compared with $10.0 million in the first fiscal quarter of 2007 and $5.6 million for the same period in fiscal 2006. The increase over last year's second quarter was partially due to the inclusion of the Pitt Penn Group, acquired January 31, 2006, which added approximately $5.0 million in revenue, and also reflects increased demand across the Pitt Penn and Unifide product lines. The 70% sequential revenue gain over the first quarter was due to the company's higher production level, resulting from operating efficiencies combined with strong order

8

flow within the company's end markets.

The company reported gross profit of $4.0 million, representing a gross margin of 23.7%, versus $2.7 million, or 27.1%, in the first quarter of fiscal 2007 and $1.4 million, or 24.7%, in the second quarter of fiscal 2006. The decrease in margins was due to a different product mix as a result of expanding operations and the mild weather in the December quarter. EBITDA (earnings before interest, taxes, depreciation and amortization) for the quarter was $2.8 million, or $0.20 per share. Income from operations was $2.3 million in the quarter versus $345,000 in the first quarter. Notably, operating expenses were 25%, or $600,000, lower than the first quarter reflecting the absence of one-time expenses arising from the consolidation of our facilities. The net loss for the quarter was ($1.8 million), which includes $4.1 million in non-cash expenses associated with the company's convertible securities and warrants. The conversion of over 50% of the convertible notes and exercise of warrants resulted in an accelerated charge to income of the valuation of such securities added to the balance sheet arising from their issuance. The company's fully diluted shares calculated using the treasury method as of December 31, 2006 was 13.9 million.

For the six months of fiscal 2007, Industrial Enterprises of America reported revenue of $27.0 million versus $10.6 million in the same period last year, reflecting the acquisition of Pitt Penn and increased demand for its automotive products. Gross profit was $6.8 million, representing a gross margin of 25.2%, versus $2.8 million, or 26.6%, for the same period in fiscal 2006. EBITDA was $5.8 million, or $0.41 per share. The net loss for the period was ($1.1) million, versus a loss of $(0.8) million for the first half of fiscal 2006.

28.     That same day the Company filed with the SEC its quarterly report for the second quarter ended December 31, 2006, on Form 10QSB, repeating many of the same statements set forth above. The 10QSB was signed by Defendant Mazzuto as CEO and CFO and was separately certified by him pursuant to SOX.

29.     On March 19, 2007, the Company announced that it had appointed Defendant O'Neill as the Company's CFO, replacing Defendant Mazzuto, who up until that time had been acting as the Company's CEO and CFO.

30.     On May 21, 2007, the Company filed with the SEC a materially false and misleading quarterly report for the third quarter ended March 31, 2007, on Form 10QB. The 10QSB was signed

by Defendant Mazzuto as CEO and CFO of the Company and was separately certified by him pursuant to SOX.

      31.    On May 22, 2007, the Company issued a materially false and misleading press release highlighting its third quarter results. The press release states in relevant part:

> NEW YORK--(BUSINESS WIRE)--Industrial Enterprises of America, Inc. (NASDAQ: IEAM - News), a specialty automotive aftermarket supplier, today announced results for the fiscal third quarter and nine months ended March 31, 2007. Revenue for the third quarter was $17.6 million as compared with $9.0 million for the same period in fiscal 2006. The increase in revenue over last year was partially due to the inclusion of the Pitt Penn Group, acquired January, 2006, and more importantly due to increased production capabilities.
>
> For the period ended March 31, 2007, Management has determined that its inventory accounting method for the Pitt Penn and Unifide subsidiaries needed to be corrected from average cost accounting to FIFO (First In, First Out). Absent the accounting correction, results for the third quarter would have been a gross profit of $4.8 million, representing a gross margin of 27.3%, and EBITDA (earnings before interest, taxes, depreciation and amortization) of $3.7 million, or $0.29 per share, calculated using the treasury method, or 13 million shares as of March 31, 2007.
>
> As a result of this correction in inventory accounting, cost of goods sold for the third quarter was $0.9 million higher than it would have been under the prior methodology. Reported gross profit for the third quarter was $3.9 million, representing a gross margin of 22.2%, versus a loss of $(1.9) million in the third quarter of last year. EBITDA was $2.8 million, or $0.22 per share. The net loss for the three months ending March 31, 2007 includes approximately $9,300,000 in non-cash charges.
>
> For the first nine months of fiscal 2007, Industrial Enterprises of America reported revenue of $41.6 million versus $19.6 million in the same period last year, reflecting the acquisition of Pitt Penn and increased demand for its automotive products. Gross profit was $11.4 million, representing a gross margin of 27.4%, versus $0.9 million, or 4.4%, for the same period in fiscal 2006. EBITDA was $6.8 million, or $0.52 per share. The net loss for the nine month period was $6.7 million, versus a loss of $7.4 million for the first nine months of fiscal 2006.
>
> "We are very pleased with our overall financial results, with EBITDA on target prior to the inventory accounting correction. Revenues were lower than previously guided due to mild weather during the quarter, and a higher than expected number of contract packaging contracts which recognize only processing fees," commented John Mazzuto, Chief Executive Officer of Industrial Enterprises of America. "During the fiscal third quarter,

the company increased unit through-put by approximately 30% through improved operating efficiencies and additional manufacturing shifts. Our order flow continues to outpace shipments, and we will continue to leverage our production capacity and look at opportunistic acquisitions that can improve our asset utilization."

32.    On July 12, 2007, the Company issued a materially false and misleading press release announcing a fourth quarter and year-end update.  The press release states in relevant part:

Industrial Enterprises Provides Fourth Quarter and Year-End Update
Thursday July 12, 3:05 pm ET

Board of Directors Authorizes $25 million Increase to Share Repurchase Program

NEW YORK--(BUSINESS WIRE)--Industrial Enterprises of America, Inc. (NASDAQ: IEAM - News), a specialty automotive aftermarket supplier, today reported preliminary fiscal fourth quarter financial highlights, including positive changes in its capital structure and balance sheet.

As expected, a majority of the Company's $4.6 million in convertible debt was converted into equity at the end of the quarter, and the Company's overall debt was reduced to less than $3 million from greater than $14 million. Additionally, the total number of warrants outstanding fell to fewer than 500,000 from 2 million. The reduction of convertible debentures and warrants outstanding significantly lowers the potential dilution going forward; however, due to the recent conversion of debt into equity, warrants exercised, and the interest and liquidated damages related to such debt paid in stock, the Company's outstanding share count has temporarily increased to approximately 19 million shares of common stock. The current share count also reflects management's near-term decision to use warrant proceeds to pay down debt instead of buy back shares. Shares outstanding does not include shares repurchased in the Company's share repurchase program, via cash or note, shares that are in the process of being cancelled and shares that have been issued but not earned, which would all be reported by the transfer agent as outstanding.

Due to the improved financial strength of the Company's balance sheet, the Board of Directors has voted to increase the existing share buyback program by $25 million dollars in order to minimize the effect of the debt conversions and to keep the share count consistent with management's prior 13-14 million share guidance. This does not include stock that may be issued as part of future acquisitions.

For the fiscal fourth quarter ended June 30, 2007, financial performance is expected to be on par with previously guided earnings estimates of $4.0 million, although such performance is always subject to auditor adjustments. However, revenues are expected to

11

come in lower than anticipated due to a change in product mix, as previously discussed on the Company's third quarter conference call. Additionally, the Company's accounts receivable balance, which had risen sharply in the previous two quarters due to bulk sales, has been subsequently reduced by those amounts as receivables on the bulk sales have been collected. Actual financial results are expected to be reported sometime in late September.

Chief Executive Officer John Mazzuto stated, "Moving into fiscal 2008, our balance sheet is stronger than it has ever been, and the potential dilution to our stockholders has been largely eliminated due to the conversion of debt and exercise of warrants. I feel we have taken the necessary steps to position IEAM for substantial revenue growth and margin expansion going forward, providing a strong return on investment for our stakeholders. Now that our Board of Directors has authorized an increase in our share repurchase program, we will continue to purchase stock at the appropriate times."

33.     On September 4, 2007, the Company issued a press release announcing that Defendant Yepes had been appointed the Company's CFO, replacing Defendant Mazzuto.

**TRUTH BEGINS TO EMERGE**

34.     The relevant truth began to enter the market and/or materialize through partial disclosures.   On October 15, 2007, after market close, the Company issued a press release announcing a review of accounting practices.  The press release states in relevant part:

**Industrial Enterprises to Review Accounting Practices**
Monday October 15, 5:05 pm ET

**Company Announces the Closing of New Credit Facility**

NEW YORK, Oct. 15, 2007 (PRIME NEWSWIRE) -- Industrial Enterprises of America, Inc. (NasdaqCM:IEAM - News), today announced that management is currently conducting a review of its accounting practices including a review of its revenue recognition policy regarding ``bill and hold" transactions.

Industrial Enterprises' management is currently working to determine the most appropriate revenue recognition method to replace its prior ``bill and hold" practice. A ``bill and hold" transaction occurs when a company records a sale and gives ownership of the product to the customer, but actual delivery takes place in a later period. While a change in its revenue recognition policy would only affect the timing of recognition of

12

certain revenue, management has determined that its previous policy needs further review. The company will provide updated information once it has completed an in-depth analysis of the most appropriate revenue recognition method.

Additionally, during the year-end review, management has determined that one of its supplier's is a variable interest entity (VIE). A VIE is an entity in which a company has a controlling financial interest. In this specific case, while neither the company nor any of its employees has any financial interest in the vendor, management has determined that because the company is this vendor's sole customer, under GAAP accounting, they are considered a VIE. The Company is reviewing the most appropriate treatment of this VIE, which may include the audit of the financials of the VIE and the consolidation of the financial statements of the VIE into the financial statements of the company.

Management is currently reviewing these changes with its audit committee and its independent auditors. If the revenue recognition policy changes or the VIE's financials need to be consolidated into the company's financials, then the company will need to amend its Quarterly Reports on Form 10-QSB for the quarters ending September 30, 2006, December 31, 2006 and March 31, 2007. Based on the above issues, the company will not be filing its delayed Annual Report on Form 10-KSB for the year ended June 30, 2007 until these matters have been resolved. The company will continue to update on the progress of the filing.

Also, in response to a Comment Letter from the Securities and Exchange Commission, the company will be amending its Annual Report on Form 10-KSB for the fiscal year ended June 30, 2006 to address comments on the accounting treatment on financing transactions with variable conversion prices for that fiscal year. Therefore, investors should not rely on the financial statements contained in the previously filed Annual Report on Form 10-KSB for the year ended June 30, 2006.

Dan Redmond, President and Chief Operating Officer, commented, ``New Chief Financial Officer, Jorge Yepes and I are committed to improving the financial reporting and transparency of the company. Since my arrival in April of this year, Industrial Enterprises has made numerous strides improving manufacturing efficiencies and operational controls. We are dedicated to restoring our financial transparency in the marketplace. I am confident the company has the right people in place to deliver consistent growth and measurable results."

Industrial Enterprises also reports that the company has secured a revolving credit line of $5 million. The credit facility is an asset and receivable backed revolving line of credit and carries interest at LIBOR plus 2.00% or the Prime rate minus 0.25%. Assuming certain conditions are met the credit line will be reviewed for further increases by year end. The credit facility was done through Sovereign Bank.

According to Jorge Yepes, Chief Financial Officer of Industrial Enterprises, ``We are pleased to announce the closing of a new credit facility. The credit facility will provide us greater flexibility in managing our business and funding growth initiatives, and reduces our borrowing cost when compared to our previous credit line. A portion of the credit line will also be utilized to continue the company's previously announced stock buyback program. While we are disappointed that we will not be able to meet our filing extension, we are working diligently to ensure that our financial reports include improved financial disclosures and transparency."

35.     The October 15, 2007 adverse announcement caused the Company's stock to fall approximately 15% on October 16, 2007, on extremely heavy volume.

36.     On November 7, 2007, after market close, the Company issued an announcement regarding its accounting review.  The announcement states in relevant part:

Industrial Enterprises Provides Accounting Update
Wednesday November 7, 4:49 pm ET

NEW YORK, Nov. 7, 2007 (PRIME NEWSWIRE) -- Industrial Enterprises of America, Inc. (NasdaqCM:IEAM - News) today provided an update on its accounting review for the Company's fiscal year ended June 30, 2007, and made certain other announcements.

During the year-end annual audit, it has come to the Company's attention that a supplier to the Company may be required to be accounted for as a Variable Interest Entity (VIE) due to the fact that the Company is its sole customer. Based upon further evaluation by both the Company and its auditors, the VIE does not appear to be material to the overall operations of the Company and consequently does not appear to require an audit or to be consolidated into the Company's financials. The Company's previous auditors are now reviewing this relationship during the fiscal 2006 time period and are evaluating whether the VIE needs to be consolidated into the Company's fiscal 2006 financials. Company management believe that the auditors will concur with the 2007 accounting treatment of the VIE, but no conclusion has yet been made. Management cautions that the filing of the 2007 Form 10KSB is contingent upon the Company filing the restated 2006 annual report.

Also, during the Company's internal review of its accounting policies, it has determined that its reserve for current litigation should be increased by an additional $9.5 million, to $13.5 million.

Additionally, the Company has determined, after reviewing its bill and hold transactions for fiscal 2007, that the Company did not properly follow GAAP revenue recognition procedures. Therefore, the bill and hold transactions for the quarter ended December 31,

2006 in the amount of approximately $3.1 million will be cancelled, and the bill and hold sales for the quarter ended March 31, 2007 in the amount of $4.9 million will also be cancelled. Such bill and hold sales represented $1.3 million of EBITDA in the quarter ended December 31, 2006 and $3.5 million of EBITDA in the quarter ended March 31, 2007. Also, the bill and hold transactions that were to take place in the 4th quarter have been cancelled. These sales would have accounted for EBITDA in excess of $1.5 million. Based on the cancellation of the fourth quarter bill and hold sales, the EBITDA guidance for the quarter is no longer applicable. Of the total cancelled bill and hold revenue, $1.6 million will be reflected in the first quarter of 2008 representing $1.1 million in EBITDA and $1.2 million in revenue will be recorded in the second quarter of 2008 representing EBITDA of approximately $400,000. The margins on these sales were unusual because the Company was able to sell finished goods inventory that the Company had purchased at distress prices. It is expected that the Company's customers will continue to execute bulk transactions in the future; however, the margins from the previous bill and hold transactions are not sustainable.

All bill and hold purchases were paid in full, and cash was received prior to June 30, 2007, but because the buyers were unable to take delivery of their merchandise, the Company was forced to cancel these transactions and will reflect an approximate $8 million in liabilities on its books at the year ended June 30, 2007. The buyers of the bulk purchases have agreed to settle their potential claims for these cancelled sales for 2.4 million shares of restricted stock and the above purchase and delivery of product. This settlement will remove the liability during the second quarter ended December 31, 2007. Additionally, Industrial Enterprises has the option to repurchase these shares at current market prices.

*    *    *    *

Also, during the year end annual audit, it was determined that certain litigation expenses paid by the Company's CEO John Mazzuto, in defense of litigation against the Company and Mr. Mazzuto personally, were not recorded as an expense by the Company and that such expenses should be reimbursed to Mr. Mazzuto. The Company and its auditors have determined that such payments should have been recorded as an expense by the Company and reflect a liability to repay Mr. Mazzuto approximately $1.2 million. Mr. Mazzuto has agreed to accept 500,000 shares of restricted stock as settlement for these paid legal expenses.

*    *    *    *

According to CEO John Mazzuto, "We take our responsibility to provide complete and accurate financial information seriously and are taking proactive steps that we believe are appropriate under these circumstances. Given the current price of the Company's common stock, the Company will add additional debt over and above the $10 million recently added, to increase the pace of the share buyback as well as to expand operations."

15

37.    Later that day it was announced that defendant Yepes was being suspended by the Company effective November 6, 2007, in connection with an internal integrity review.

38.    The November 7, 2007 adverse announcements caused the Company's stock to lose over half of its value on November 8, 2007, from a closing price of $2.19 per share on November 7 to a closing price of $.80.

39.    Had the Plaintiff and the Class been aware of this adverse information they would not have purchased the Company's securities at all or would not have purchased such securities at the artificially inflated prices at which they did.

### Applicability of Presumption of Reliance:
### Fraud-on-the-Market Doctrine

40.    At all relevant times, the market for IEAM's common stock was an efficient market for the following reasons, among others:

(a)    IEAM's stock met the requirements for listing, and was listed and actively traded on the NASDAQ Capital Market and Bulletin Board, highly efficient and automated markets;

(b)    During the class period, on average, several hundreds of thousands of shares of IEAM stock were traded on a weekly basis, demonstrating a very active and broad market for IEAM stock and permitting a *very strong* presumption of an efficient market;

(c)    As a regulated issuer, IEAM filed with the SEC periodic public reports during the Class Period;

(d)    IEAM regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national

circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)    IEAM was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f)    Numerous NASD member firms were active market-makers in IEAM stock at all times during the Class Period; and

(g)    Unexpected material news about IEAM was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

41.    As a result of the foregoing, the market for IEAM's common stock promptly digested current information regarding IEAM from all publicly available sources and reflected such information in IEAM's stock price. Under these circumstances, all purchasers of IEAM's common stock during the Class Period suffered similar injury through their purchase of IEAM's common stock at artificially inflated prices, and a presumption of reliance applies.

## NO SAFE HARBOR

42.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the

statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of IEAM who knew that those statements were false when made.

### FIRST CLAIM
#### Violation of Section 10(b) Of
#### The Exchange Act Against and Rule 10b-5
#### Promulgated Thereunder Against All Defendants

43.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase IEAM's common stock at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

45.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for IEAM's common stock in violation of Section 10(b) of the Exchange Act and Rule

18

10b-5 thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of IEAM as specified herein.

47.     These Defendants employed devices, schemes and artifices to defraud while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of IEAM's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about IEAM and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaging in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of IEAM's common stock during the Class Period.

48.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other Defendants and was

19

advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination to the investing public of information that they knew or recklessly disregarded to be materially false and misleading.

49.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing from the investing public IEAM's operating condition and future business prospects and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

50.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of IEAM's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of IEAM's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during

the Class Period, Plaintiff and the other members of the Class acquired IEAM common stock during the Class Period at artificially high prices and were or will be damaged thereby.

51.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding IEAM's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their IEAM common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

52.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

53.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

54.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

55.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.    The Individual Defendants acted as controlling persons of IEAM within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

57.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58.    As set forth above, IEAM and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

59.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

60.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 14, 2007                    Respectfully submitted,

                                            **THE ROSEN LAW FIRM, P.A.**

                                            Phillip Kim, Esq.  (PK 9384)
                                            Laurence Rosen, Esq. (LR 5733)
                                            350 Fifth Avenue, Suite 5508
                                            New York, NY  10118
                                            Phone: (212) 686-1060
                                            Fax: (212) 202-3827

                                            Counsel for Plaintiff

23





**From** postmaster@rosenlegal.com
**Date** 2007/11/12 Mon AM 11:14:14 CST
**To** rosenlegal@verizon.net
**Subject** Confirmation of Receipt of Certification

Dear annmarie mallozzi,

We have received your certification in the Industrial Enterprise of America, Inc. class action litigation. Thank you for submitting your information. Below is a copy of your certification - please retain it for your records. If you have any questions, please feel free to contact us at 1-866-rosenlegal (866-767-3653) or via e-mail at info@rosenlegal.com.

With increasing frequency, we find that our new clients were victimized by more than one company. If you think you may have lost monies in the market due to the dishonest acts or statements of a different company and would like it to be investigated, free of charge, please email us at reportfraud@rosenlegal.com.

Sincerely,

The Rosen Law Firm P.A.

--------

CERTIFICATION

Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Industrial Enterprise of America, Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Industrial Enterprise of America, Inc. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

First name: annmarie

Last name: mallozzi

Address:

City:

State, Zip:

Email:

Phone:

The Plaintiff Certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Shares Purchased:

Purchase Date(s): 5/22/07
Number of shares: 500
Price per Share: 5

Shares Sold:

7. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except if detailed below:

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate: yes

By clicking on the button below, I intend to sign and execute this agreement: yes

Clicked to Submit Certification in the Industrial Enterprise of America, Inc. Action

Signed pursuant to California Civil Code Section 1633.1, et seq. - Uniform Electronic Transactions Act

------------

Confidential Information

The information in this e-mail message is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (866-767-3653) and return the original message to the above e-mail address. Thank you.

------------

# EXHIBIT 3

*Donovan Searles, LLC*
*1845 Walnut Street*
*Suite 1100*
*Philadelphia, PA 19103*
*(215) 732-6067*
*www.donovansearles.com*

## CERTIFICATION OF NAMED PLAINTIFF UNDER
## THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995

I, _Ronald S Goldenberg_ declare as follows with respect to claims under the federal securities laws alleged:

1.    I seek to join as one of the plaintiffs named in the foregoing action ("the Action").

2.    I have reviewed the Action with my counsel and have authorized my joinder.

3.    I did not purchase securities of _TEAM_ ("_____") at the direction of my counsel or in order to participate in any private securities action.

4.    I am willing to serve as a representative party on behalf of the class, including providing testimony at depositions and trial, if necessary.

5.    The following sets forth all of my transactions during the class period in _____ securities:

| PURCHASE OR SALE | TYPE OF ACCOUNT | NO. OF SHARES | PRICE PER SHARE | DATE |
|---|---|---|---|---|
| Purchase | IRA* | _____ | $_____ | _____ |
| Purchase | IRA* | _____ | $_____ | _____ |

see attached

* E.g. Cash, Margin, IRA, 401-K, Trust, etc.

6.    The following sets forth all federal securities actions filed during the past three years in which I have served or sought to serve as a representative party on behalf of a class: **NONE.**

7.    I will not accept any payment for serving as a representative party on behalf of the class beyond its pro rata share of any recovery to the class, plus reasonable costs and expenses (including lost wages) directly relating to the representation of the class, except as approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Signed at _Phila_, _PA_, this _11_ day of _Jan_, 200_8_

_[signature]_

_511 So 21st St_
address _#302_

address _Phila Pa 19146_
phone

_215-772-3110_

*Donovan Searles, LLC*
*1845 Walnut Street*
*Suite 1100*
*Philadelphia, PA 19103*
*(215) 732-6067*
*www.donovansearles.com*

2

[Close Window]                                                                                                   [F

History for account XXXX-7031 as of 01/11/2008 15:29:51 EDT

| Date | Action | Quantity | Symbol | Description | Price | Amount | Fees & Co |
|------|--------|----------|--------|-------------|-------|--------|-----------|
| 10/30/2007 | Buy | 700.0000 | IEAM | INDL ENTS OF AMER NEW | $3.1600 | -$2,221.78 | $9.78 |
| 10/30/2007 | Buy | 1,300.0000 | IEAM | INDL ENTS OF AMER NEW | $3.1600 | -$4,126.17 | $18.17 |
| 10/18/2007 | Sell | 2,000.0000 | IEAM | INDL ENTS OF AMER NEW | $3.7100 | $7,391.93 | $28.07 |
| 10/16/2007 | Buy | 2,000.0000 | IEAM | INDL ENTS OF AMER NEW | $3.2000 | -$6,427.95 | $27.95 |
| 07/16/2007 | Buy | 1,000.0000 | IEAM | INDL ENTS OF AMER NEW | $4.5600 | -$4,572.95 | $12.95 |
| 05/22/2007 | Sell | 1,150.0000 | IEAM | INDL ENTS OF AMER NEW | $5.0500 | $5,792.21 | $15.29 |
| 05/22/2007 | Buy | 1,150.0000 | IEAM | INDL ENTS OF AMER NEW | $4.5700 | -$5,270.70 | $15.20 |
| 05/21/2007 | Sell | 1,000.0000 | IEAM | INDL ENTS OF AMER NEW | $5.1000 | $5,086.97 | $13.03 |
| 05/21/2007 | Buy | 1,000.0000 | IEAM | INDL ENTS OF AMER NEW | $5.0700 | -$5,082.95 | $12.95 |
| 05/07/2007 | Buy | 754.0000 | IEAM | INDL ENTS OF AMER NEW | $6.0000 | -$4,534.28 | $10.28 |
| 05/07/2007 | Buy | 746.0000 | IEAM | INDL ENTS OF AMER NEW | $6.0000 | -$4,486.17 | $10.17 |
| 04/30/2007 | Buy | 2,600.0000 | IEAM | INDL ENTS OF AMER NEW | $6.2500 | -$16,286.95 | $36.95 |
| 04/30/2007 | Buy | 1,400.0000 | IEAM | INDL ENTS OF AMER NEW | $6.3300 | -$8,880.95 | $18.95 |
| 04/30/2007 | Sell | 2,400.0000 | IEAM | INDL ENTS OF AMER NEW | $6.6500 | $15,925.80 | $34.20 |
| 04/27/2007 | Sell | 100.0000 | IEAM | INDL ENTS OF AMER NEW | $6.4300 | $640.83 | $2.17 |
| 04/27/2007 | Sell | 500.0000 | IEAM | INDL ENTS OF AMER NEW | $6.4400 | $3,209.16 | $10.84 |
| 04/13/2007 | Buy | 1,000.0000 | IEAM | INDL ENTS OF AMER NEW | $5.8000 | -$5,812.95 | $12.95 |
| 02/22/2007 | Buy | 1,000.0000 | IEAM | INDL ENTS OF AMER NEW | $5.9800 | -$5,992.95 | $12.95 |
| 02/16/2007 | Buy | 1,000.0000 | IEAM | INDL ENTS OF AMER NEW | $5.5000 | -$5,512.95 | $12.95 |
| 12/29/2006 | Sell | 2,000.0000 | IEAM | INDL ENTS OF AMER NEW | $4.3700 | $8,711.78 | $28.22 |
| 12/28/2006 | Buy | 1,500.0000 | IEAM | INDL ENTS OF AMER NEW | $4.2500 | -$6,395.96 | $20.96 |
| 12/28/2006 | Buy | 500.0000 | IEAM | INDL ENTS OF AMER NEW | $4.2500 | -$2,131.99 | $6.99 |

0006-5926

Brokerage Products: Not FDIC Insured • No Bank Guarantee • May Lose Value                Today's Date: 01/

© 2006 Charles Schwab & Co., Inc. All rights reserved. Member SIPC.
Unauthorized access is prohibited. Usage will be monitored.

Agreements | Fees & Commissions | Privacy & Security | USA Patriot Act

# EXHIBIT 4

*Donovan Searles, LLC*
*1845 Walnut Street*
*Suite 1100*
*Philadelphia, PA 19103*
*(215) 732-6067*
*www.donovansearles.com*

### CERTIFICATION OF NAMED PLAINTIFF UNDER
### THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995

I, CARL F. HAEUSSLER JR declare as follows with respect to claims under the federal

securities laws alleged:

1.     I seek to join as one of the plaintiffs named in the foregoing action ("the Action").

2.     I have reviewed the Action with my counsel and have authorized my joinder.

3.     I did not purchase securities of IND. ENT. OF AH ("IEAH") at the direction

of my counsel or in order to participate in any private securities action.

4.     I am willing to serve as a representative party on behalf of the class, including

providing testimony at depositions and trial, if necessary.

5.     The following sets forth all of my transactions during the class period in IEAH

securities:

| PURCHASE OR SALE | TYPE OF ACCOUNT | NO. OF SHARES | PRICE PER SHARE | DATE |
|---|---|---|---|---|
| Purchase | CASH * | 2800 | $ 5⁹⁰ | 3/20/07 |
| Purchase | _____ * | _____ | $_____ | _____ |
| | → SMITH BARNEY A/c | | | |

* **E.g.  Cash, Margin, IRA, 401-K, Trust, etc.**

6.    The following sets forth all federal securities actions filed during the past three years in which I have served or sought to serve as a representative party on behalf of a class: **NONE.**

7.    I will not accept any payment for serving as a representative party on behalf of the class beyond its pro rata share of any recovery to the class, plus reasonable costs and expenses (including lost wages) directly relating to the representation of the class, except as approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Signed at

JAMISON , PA , this 28 day of DECEMBER, 2007.

( ~~TEMP~~ ADDRESS)
PA

514 N. BARFIELD DR
address
MARCO ISLAND, FL
address                34145
FL - 239 - 389 - 8730
phone
PA - 215 - 343 - 1620
CELL 215 - 859 - 1793

*Donovan Searles, LLC*
*1845 Walnut Street*
*Suite 1100*
*Philadelphia, PA  19103*
*(215) 732-6067*
*www.donovansearles.com*

2

# EXHIBIT 5



FIRM
RESUME

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP

## WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP



Founded in 1888, Wolf Haldenstein Adler Freeman & Herz LLP is a full service law firm with practice groups in corporate/tax, pension/benefits, real estate, trusts and estates, healthcare, bankruptcy, limited partnerships, and civil and commercial litigation, with a particular specialty in complex class and shareholder litigation under both federal and state law.

Wolf Haldenstein's total practice approach, supported by the Firm's mid-range size, distinguishes the Firm from other firms. Our longstanding tradition of a close attorney/client relationship ensures that each one of our clients receives prompt, individual attention and does not become lost in an institutional bureaucracy. Our team approach is at the very heart of Wolf Haldenstein's practice. All of our lawyers are readily available to all of our clients and to each other. The result of this approach is that we provide our clients with an efficient legal team having the broad perspective, expertise and experience required for any matter at hand. We are thus able to provide our clients with cost effective and thorough counsel focused on our clients' overall goals.

The Firm has its principal office with lawyers in the various practice areas, at 270 Madison Avenue, New York, NY 10016. The Firm's general telephone number in New York is (212) 545-4600. The fax number in New York is (212) 545-4653. The Firm also has offices at Symphony Towers, 750 B Street, Suite 2770, San Diego, CA 92101, telephone: (619) 239-4599, fax: (619) 234-4599; 55 W. Monroe Street, Suite 1111, Chicago, IL 60603, telephone: (312) 984-0000, fax: (312) 984-0001; and 625 N. Flagler Drive, West Palm Beach, Florida 33401. The Firm's web site is accessible at http://www.whafh.com.

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP



## THE FIRM

Wolf Haldenstein's Class Action Litigation Group has been recognized by courts throughout the country as being highly experienced in complex litigation, particularly with respect to securities, consumer, ERISA, and antitrust class actions and shareholder rights litigation. The Class Action Litigation Group consists of 30 attorneys and 10 paraprofessional assistants. Brief resumes of these attorneys begin on page 13.

Also included are the resumes of attorneys from other areas of the Firm's practice who routinely lend their expertise to the Firm's class action litigators in the areas of tax, bankruptcy, corporate, trusts, labor, and ERISA law. The ability to call upon the internal expertise of practitioners in such varied areas of the law greatly enhances the strength and efficiency of the Firm's representative litigation practice and, indeed, makes Wolf Haldenstein unique among national firms specializing in class action litigation.

The nature of the Firm's activities in representative litigation is extremely broad. In addition to a large case load of securities fraud and other investor class actions, Wolf Haldenstein has represented classes of corn farmers in connection with the devaluation of their crops; contact lens purchasers for contact lens manufacturers' violations of the antitrust laws; merchants compelled to accept certain types of debit cards; insurance policyholders for insurance companies' deceptive sales practices; victims of unlawful strip searches under the civil rights laws; and various cases involving violations of Internet users' on-line privacy rights.

The Firm's experience in class action securities litigation, in particular public shareholder rights under state law and securities fraud claims arising under the federal securities laws and regulations, including the Private Securities Litigation Reform Act of 1995 ("PSLRA"), is particularly extensive. The Firm was one of the lead or other primary counsel in securities class action cases that have recouped billions of dollars on behalf of investor classes, in stockholder rights class actions that have resulted in billions of dollars in increased merger consideration to shareholder classes, and in derivative litigation that has recovered billions of dollars for corporations.

3



Among its colleagues in the plaintiffs' securities bar, as well as among its adversaries in the defense bar, Wolf Haldenstein is known for the high ability of its attorneys, the exceptionally high quality of its written and oral advocacy on behalf of class action clients, and its pioneering efforts in difficult or unusual areas of securities or investor protection laws, including: groundbreaking claims that have been successfully brought under the Investment Company Act of 1940 regarding fiduciary responsibilities of investment companies and their advisors toward their shareholders; claims under ERISA involving fiduciary duties of ERISA trustees who are also insiders in possession of adverse information regarding their fund's primary stockholdings; the fiduciary duties of the directors of Delaware corporations in connection with change of control transactions; the early application of the fraud-on-the-market theory to claims against public accounting firms in connection with their audits of publicly traded corporations; and the application of federal securities class certification standards to state law claims often thought to be beyond the reach of class action treatment.

Wolf Haldenstein's performance in representative litigation has repeatedly received favorable judicial recognition.    The following representative judicial comments over two decades indicate the high regard in which the Firm is held:

- *In Re Dynamic Random Access Memory Antitrust Litigation*, MDL-02-1486 (N.D. Cal.), where the Firm was co-lead counsel, Judge Hamilton said (on August 15, 2007): "I think I can conclude on the basis with my five years with you all, watching this litigation progress and seeing it wind to a conclusion, that the results are exceptional. The percentages, as you have outlined them, do put this [case] in one of the upper categories of results of this kind of [antitrust] class action. I am aware of the complexity . . . I thought that you all did an exceptionally good job of bringing to me only those matters that really required the Court's attention. You did an exceptionally good job at organizing and managing the case, assisting me in management of the case. There was excellent coordination between all the various different plaintiffs' counsel with your group and the other groups that are part of this litigation. . . . So my conclusion is the case was well litigated by both sides, well managed as well by both sides."

- *In In re Comdisco Sec. Litig.*, No. 01 C 2110 (July 14, 2005), Judge Milton Shadur observed: "It has to be said . . . that the efforts that have been extended [by Wolf Haldenstein] on behalf of the plaintiff class in the face of these obstacles have been exemplary. And in my view [Wolf Haldenstein] reflected the kind of professionalism that the critics of class actions . . . are

4

never willing to recognize. . . . I really cannot speak too highly of the
services rendered by class counsel in an extraordinary difficult situation."





- *In In re MicroStrategy Securities Litigation*, 150 F. Supp. 2d 896, 903 (E.D.
Va. 2001), where the Firm was a co-lead counsel, Judge Ellis commented:
"Clearly, the conduct of all counsel in this case and the result they have
achieved for all of the parties confirms that they deserve the national
recognition they enjoy."

- *In In Re Toys R Us Antitrust Litigation*, 98 MDL 1211 (NG) 191 F.R.D.
347, 351, 356 (E.D.N.Y. 2000), where the Firm served as co-lead and
liaison counsel, Judge Gershon wrote: "Class counsel are highly skilled and
experienced and can fairly and adequately represent the interests of the class
. . . . Counsel for both the class plaintiffs and the States have well-earned the
compensation that they request."

- *In Yud v. Saf T Lok,* No. 98-8507-Civ-Hurley (S.D. Fla. Dec. 15, 1999),
where the Firm was sole lead counsel, the court stated: "The attorneys have
done an outstanding amount of work and fine legal work in a short period of
time to bring this class action to resolution in a successful fashion."

- *In Kurzweil v. Philip Morris Companies,* 94 Civ. 2373, 94 Civ. 2546
(MBM) (S.D.N.Y. Nov. 13, 1998), where the Firm was sole lead counsel,
then Chief Judge Mukasey, in approving a $116.5 million settlement stated:
"In this case, this represents a lot of good, hard, serious work by a lot of
talented lawyers and I appreciate it on both sides."

- *In Paramount Communications v. QVC Network Inc.*; In re Paramount
Communications Inc. Shareholders' Litigation, 637 A.2d 34, 37 n.2 (Sup.
Ct. Del. 1994), where the Firm was co-lead counsel for the Paramount
shareholders, the Supreme Court of Delaware noted "its appreciation of . . .
the professionalism of counsel in this matter in handling this expedited
litigation with the expertise and skill which characterize Delaware
proceedings of this nature." The Court further "commended the parties for
their professionalism in conducting expedited discovery, assembling and
organizing the record, and preparing and presenting very helpful briefs, a
joint appendix, and oral argument."

- *In In re Laser Arms Corp. Securities Litigation,* 794 F. Supp. 475, 496
(S.D.N.Y. 1989), where the Firm was lead counsel, the Court stated
"plaintiffs' counsel have demonstrated their experience in securities
litigation and the Court is confident that counsel will proceed vigorously on
behalf of all class and subclass members."

- *In In re Public Service Co. of Indiana Derivative Litigation,* 125 F.R.D.
484, 486 (S.D. Ind. 1988), concerning the construction of the Marble Hill
Nuclear Power Plant, where the Firm was lead counsel, the court said:

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP

"Throughout the life of this litigation, it has been both vigorously prosecuted and aggressively defended by thoroughly competent counsel on all sides."

- *In In re Public Service Co. of New Hampshire Derivative Litigation*, 84-220-D (D.N.H. 1986), involving the construction of the Seabrook Nuclear Power Plant, where the Firm was lead counsel, the court said of plaintiffs' counsel that "the skill required and employed was of the highest caliber."

- *In In re Warner Communications Securities Litigation*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), where the Firm served as co-lead counsel, the court noted the defendants' concession that "'plaintiffs' counsel constitute the cream of the plaintiffs' bar.' The Court cannot find fault with that characterization."

- *In Steiner v. Equimark Corp.*, No. 81-1988 (W.D. Pa. 1983), a case involving complex issues concerning banking practices in which the Firm was lead counsel, then District Judge Mannsman described, in part, the work the Firm performed:

> We look at the complexity of the issue, the novelty of it, the quality of work that, as the trial judge, I am able to perceive, and then, finally, the amount of recovery obtained: I think I have certainly said a lot in that regard. I think it's been an extraordinary case. I think it's an extraordinary settlement. Certainly defense counsel and plaintiffs' counsel as well are all experienced counsel with a tremendous amount of experience in these particular kinds of cases. And under those circumstances . . . I think it was, really, the strategy and ingenuity of counsel in dividing up the workload and strategizing the cases as to who was to do what and what ultimately should be done to bring about the settlement that was achieved.

## Current Cases

Wolf Haldenstein is a leader in the class action litigation field and is currently the court-appointed lead counsel, co-lead counsel, or executive committee member in some of the largest and most significant class action lawsuits currently pending across the United States, including:

6



- *In re Initial Public Offering Securities Litigation*, 21 MC 92 (SAS) (S.D.N.Y.).

- *J.P. Morgan Chase Securities Litigation, (Blau v. Harrison)*, Civ. No. 04 C 6592 (N.D. Ill.).

- *In re Collins & Aikman Corp. Sec. Litigation*, 06-cv-13555-AJT-VMM (E.D. Mich.).

- *Lewis v. CNL Restaurant Properties*, No. 05-00083-F (Tex. Dist. Ct.).

- *In re Adelphia Communications Corp. Securities and Derivative Litigation* ("Adelphia Business Actions"), 03-ML 1529, 03 CV 5755 (LMM) (S.D.N.Y.).

- *In re Iridium Securities Litigation*, C.A. No. 99-1002 (D.D.C.).

- *In re Transkaryotic Therapies, Inc., Securities Litigation*, C.A. No. 03-10165-RWZ (D. Mass).

- *In re Loral Space & Communications Shareholders' Securities Litigation*, 03 Civ. 8262 (JES) (S.D.N.Y).

- *In re St. Paul Travelers Securities Litigation II*, Civ. No. 04-cv-4697 (JRT/FLN) (D. Minn.).

- *In re LNR Property Corp. Shareholder Litigation*, Consolidated C.A. No. 647-N (Del. Ch. Ct.).

- *In re Triad Hospitals, Inc. Shareholder Litigation*, Case No. 296-00435-07 (Tex. 296th Dist. Ct.).

- *Station Casinos Shareholder Litigation*, Master Case No. A 532367.

- *Swift Transportation Company Shareholder Litigation*, Case No. A519396 (Nev.).

- *In re Harrah's Entertainment Inc. Shareholder Litigation*, Consolidated Class Action No. 2453-N (Del. Ch.).

- *In re TXU Shareholder Litigation*, Consolidated Case No. 07-01707 (Tex. 44th Dist. Ct.).

- *In re EGL, Inc. Shareholder Litigation*, Cause No. 2007-00139 (Tex. 125th Dist. Ct.).

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP




- *Clear Channel Shareholder Litigation,* Cause No. 2006-CI-17492 (Tex. 408th Dist. Ct.)

- *In re Tyson Foods, Inc. Consolidated Shareholder Litigation*, Consolidated C.A. No. 1106-N (Del. Ch. Ct.).

- *In re American Pharmaceutical Partners, Inc. Shareholder Litigation,* Consolidated C.A. No. 1823-N (Del. Ch. Ct.).

- *In re Tower Automotive ERISA Litigation,* No. 05 CV 2184 (LLS) (S.D.N.Y.).

- *MBNA Corp. ERISA Litigation,* C.A. No. 05-429 GMN (D. Del.).

- *In re Aon ERISA Litigation,* No. 04 C 6875 (N.D. Ill.).

- *In re Aquila, Inc.,* (ERISA Litigation), 04-865 (W.D. Mo.).

- *Spiziri v. The St. Paul Travelers Companies, Inc.* (ERISA Litigation), Civ. No. 04-5096 JRT/FLN (D. Minn.).

- *In re Harley Davidson, Inc. ERISA Litigation,* Case No. 05-C-00547-CNC (E.D. Wisc).

- *In re Guidant Corp. ERISA Litigation,* 1:05-cv-1009-LJM-TAB (S.D. Ind.)

- *Harris v. Amgen, Inc., et al.,* Case No. CV 07-5442- PSG (C.D. Cal.) (ERISA Action).

- *Schoenbaum v. E.I. DuPont de Nemours and Company, et al.,* Case No. 4:05-cv-01108 ERW (E.D. Mo.) (consolidated antitrust cases concerning genetically modified corn and soybean seeds).

- *In re Genetically Modified Rice Litigation,* MDL 1811 (E.D. Mo.).

- *In re Sulfuric Acid Antitrust Litigation,* Master File No. 03 C 4576 (N.D. Ill.).

- *In re McDonough, et al. v. Toys "R" Us, Inc., et al.,* No 2:06 CV 00242-AB (E.D. Pa.).

- *In re Copper Tubing Antitrust Litigation,* No. 04-2771-DV.

- *In re ACR Copper Tubing Antitrust Litigation,* No. 06-2207-DP (W.D. Tenn.).

- *In re Evanston Northwestern Healthcare Corp. (ENH) Antitrust Litigation,* No. 07-4446-JHL (N.D. Ill.).

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP



Beginning on page 25 is a representative listing of cases in which the Firm has been lead or one of the plaintiffs' primary counsel and the results achieved in those cases. In addition, a representative list of published decisions in cases in which Wolf Haldenstein has played a lead or other significant role begins on page 29.

### DERIVATIVE CASES

Wolf Haldenstein is a leader in the derivative litigation field and is currently leading counsel in some of the most significant derivative actions pending in the United States, including:

- *In re Mutual Fund Investment Litigation*, MDL No. 1586 (D. Md.).

- *Levin v. Kozlowski, (Tyco Derivative Litigation)*, No. 602113/2002 (N.Y. Sup. Ct.).

- *AIG, Inc. Consolidated Derivative Litigation*, C.A. No. 769-N (Del. Chanc.).

- *In re R&G Financial Corp. Derivative Litigation*, 1:05-CV-5547 (S.D.N.Y.).

- *In re Cablevision Systems Corp. Shareholder Derivative Litigation*, Master File No. 06-CV-4130-DGT-AKT.

- *General Motors Derivative Litigation*, MDL Docket No. 1749 (E.D. Mich.).

- *In re Applied Micro Circuits Corp., Inc. Derivative Litigation*, Lead Case No. CV 06-04269 JW (N.D. Cal.).

- *In re Atmel Corp. Derivative Litigation*, Master File No. 06-4592 JF (HRL) (N.D. Cal.).

- *In re Monster Worldwide, Inc. Stock Option Derivative Litigation*, Master File No. 06cv4622 (S.D.N.Y.).

- *In re Novellus Systems, Inc. Derivative Litigation*, Master File No. C 06-03514 RMW (N.D. Cal.).

- *In re Verisign, Inc. Derivative Litigation*, Master File No. C-06-4165-PJH (N.D. Cal.).

- *In re Western Digital Corp. Derivative Litigation*, Master File No. SACV 06-729-AG (RNBx) (C.D. Cal.).

9

- *Teitelbaum v. Cohen*, No. 2833-VCS (Del. Ch.) (*L-3 Communications Holdings, Inc. Derivative action*).

## OVERTIME AND COMPENSATION CLASS ACTIONS



Wolf Haldenstein is a leader in the field of class action litigation on behalf of employees who have not been paid overtime or other compensation they are entitled to receive, or have had improper deductions taken from their compensation. These claims for violations of the federal Fair Labor Standards Act and state labor laws, allege improper failure to pay overtime and other wages, and improper deductions from compensation for various company expenses. Wolf Haldenstein is currently lead or co-lead counsel, or other similar lead role, in some of the most significant overtime class actions pending in the United States, including those listed below:

- *Lavoice v. Citigroup Global Markets, Inc.*, 06-0756 (S.D.N.Y.)

- *Basile v. A.G. Edwards, Inc.*, 06-cv-0833 (N.D.N.Y)

- *Rosenthal v. A.G. Edwards & Sons, Inc.*, 06-3995 (D.N.J.)

- *Palumbo v. Merrill Lynch*, 06-2104 (E.D.N.Y.)

- *Garrison v. Merrill Lynch*, 06-3553 (D.N.J.)

- *Roles v. Morgan Stanley*, 05-7889 (E.D.N.Y.)

- *Lenihan v. Morgan Stanley*, 06-00794 (D. Conn.)

- *Klein v. Ryan Beck*, 06-03460 (S.D.N.Y.)

- *Badain v. Wachovia*, 06-06321 (W.D.N.Y.)

- *Garcia v. Lowe's Home Centers, Inc.*, Case No. GIC 841120 (S.D. Supr.)

- *Weinstein v. MetLife, Inc.*, 06-cv-04444-SI (N.D. Cal.)

## BIOTECHNOLOGY AND AGRICULTURAL LITIGATION

Wolf Haldenstein is a leader in biotechnology and agricultural litigation. The firm has represented U.S. row crop farmers and others harmed by crop supply contamination, price fixing of genetically-modified crop seeds, and false claims and representations relating to purportedly "organic" products. The firm has prosecuted actions in these fields against domestic and international biotechnology and crop science companies under the federal

10



and state antitrust laws, consumer protection and deceptive trade practice statues, and the common law.  As a leader in this field, Wolf Haldenstein pioneered approaches now commonly used in these types of cases, including the use of futures-based efficient market analyses to fashion damages models relating to the underlying commodity crops.  The firm has served or is currently serving as lead or co-lead counsel in some of the most significant biotechnology and agricultural class actions pending in the United States, including:

*In re StarLink Corn Products Liability Litigation*, MDL No. 1403 (N.D. Illinois) – class action that recovered $110 million for U.S. corn farmers who sustained market losses arising from defendants' contamination of the U.S. food corn supply with an improperly bioengineered corn seed product.

*Schoenbaum v. E.I. DuPont de Nemours and Company, et al.*, Case No. 4:05-cv-01108 ERW (E.D. Mo.) – Consolidated antitrust cases concerning genetically modified corn and soybean seeds.

*In Re Genetically Modified Rice Litigation*, MDL 1811 (E.D. Mo.) – Consolidated class actions  representing the interests of United States long-grain rice producers seeking to recover damages they sustained resulting from the contamination of the U.S. rice supply with unapproved, genetically-modified rice seed traits developed and tested by Bayer CropScience LP and related entities.  The website the firm maintains on the case is www.bayerricelitigation.com.

For more information about our efforts in these fields, please contact Wolf Haldenstein partner Adam Levitt at (312) 984-0000.

## PRIVATE ACTIONS FOR INSTITUTIONAL INVESTORS

In addition to its vast class action practice, the Firm also regularly represents institutional clients such as public funds, investment funds, limited partnerships, and qualified institutional buyers.  The Firm has represented institutional clients in non-class federal and state actions concerning a variety of matters, including private placements, disputes with investment advisors, and disputes with corporate management.  Examples of such cases include:

11



- *Steed Finance LDC v. Laser Advisers, Inc.*, 99 Civ. 4222 (PKC)(S.D.N.Y.), a fraud, negligence, breach of contract and breach of fiduciary duty action brought by a hub fund, a related feeder fund and individual investors in the feeder fund against the funds' former investment advisors for mispricing certain securities and derivative instruments in the funds' fixed-income securities portfolio.

- *Diversified Asset Securitization Holdings I, L.P. v. Enterprise Mortgage Acceptance Co, LLC, et al.*, 02 Civ. 10228 (SWK) (S.D.N.Y.), a federal and state securities fraud action brought by limited partnerships that pooled the investments of various insurance companies against the issuer and management and controlling shareholder of the issuer, concerning misrepresentations made in connection with a private placement of certificates representing interests in a securitized pool of loans made to franchise operations of car care businesses, gas stations, convenience stores and quick service restaurants.

- *Gramercy Park Investments v. Airfund International*, No. 97-22734B (Mass.Super. Ct.); *Gramercy Park Investments v. The Krupp Realty Fund*, No. 97-1612 (Mass.Super.Ct.); *Geodyne Resources v. Gramercy Park Investments*, No. CJ-96-05548 (Dist.Ct.Okla.); *Gramercy Park Investments v. Wells Real Estate Fund*, No. 97-A-0241-3 (Ga.Super.Ct.); *Gramercy Park Investments v. Swift Energy*, No. 96-61729 (Dist.Ct.Tex.); and *Lexington Family Investments v. Dean Witter*, No. 15217-96 (N.Y.Sup.Ct.); actions brought on behalf of institutional investors in state courts throughout the nation demanding inspection of investor lists and other corporate and partnership information.

- *Madison Partnership Liquidity Investors v. American Cable TV Investors*, 97 Civ. 4950 (JSM) (S.D.N.Y.); and *Madison Partnership Liquidity Investors v. PLM Equipment Growth Fund*, 98 Civ. 4057 (JSM)(S.D.N.Y.); actions brought on behalf of institutional investors against fund management for improper defensive actions taken in response to investors' acquisitions of large positions in funds.

The Firm has also acted as special counsel to investors' committees in efforts to assert the investors' interests without resort to litigation. For example, the Firm served as Counsel to the Courtyard by Marriott Limited Partners Committee for several years in its dealings with Host Marriott Corporation, and as Special Counsel to the Windsor Park Properties 7 and 8 limited partners to insure the fairness of their liquidation transactions.

12



## THE CLASS ACTION LITIGATION GROUP

The qualifications of the attorneys in the Wolf Haldenstein Litigation Group are set forth below and are followed by descriptions of some of the Firm's attorneys who normally practice outside the Litigation Group who contribute significantly to the class action practice from time to time.

## PARTNERS

DANIEL W. KRASNER: *admitted*: New York; Supreme Court of the United States; U.S. Courts of Appeals for the Second, Third, Fourth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, Central District of Illinois, and Northern District of Michigan. *Education*: Yeshiva College (B.A. 1962); Yale Law School (LL.B., 1965). Lecturer: Practicing Law Institute; Rutgers Graduate School of Business. Member: the Association of the Bar of the City of New York; Rockland County, New York State and American Bar Associations; Federal Bar Council. Mr. Krasner has lectured frequently before bar groups and has educated groups on securities laws and investors rights. His qualifications have received favorable judicial recognition on many occasions. *See, e.g., Shapiro v. Consolidated Edison Co.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 96,364 at 93,252 (S.D.N.Y. 1978) ("in the Court's opinion the reputation, skill and expertise of . . . [Mr.] Krasner, considerably enhanced the probability of obtaining as large a cash settlement as was obtained"); *Steiner v. BOC Financial Corp.*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 97,656, at 98,491.4, (S.D.N.Y. 1980) ("This Court has previously recognized the high quality of work of plaintiffs' lead counsel, Mr. Krasner"). *The New York Law Journal*, August 1, 1983, at p. 5 (referring to Mr. Krasner as one of the "top rank plaintiffs' counsel" in the securities and class action fields.).

FRED TAYLOR ISQUITH: *admitted*: New York; District of Columbia; Supreme Court of the United States; U.S. Courts of Appeals for the First, Second, Third, Fourth and Eighth Circuits; U.S. District Courts for the Southern, Eastern and Northern Districts of New York, District of Arizona, District of Colorado, Central District of Illinois, Western District of Michigan and District of Nebraska. *Education*: Brooklyn College of the City University of New York (B.A., 1968); Columbia University (J.D., 1971).

13



Author, "Post Arbitration Remedies," for an Introduction to Securities Arbitration (NYSBA, 1994); "A Plaintiff's Lawyer Examines Limited Partnership Roll-ups for Real Estate Exit Strategies" (American Conference Institute, 1994); Federal Civil Practice Supplement, "Representative Actions," (NYSBA, 2000). Columnist for weekly column "From the Courts," for *The Class Act*, National Association of Securities and Class Action Attorneys. Lecturer, IPO Tie In/Claims Seminar, Professional Liability Underwriter Society; Securities Arbitration New York State Bar Association; Real Estate Exit Strategies, American Conference Institute; Fundamental Strategies in Securities Litigation (NYSBA, CLE Program). He is an arbitrator with the American Arbitration Association and with the Civil Court of the City of New York and a mediator for the ADR Program of the Supreme Court, County of New York, Complex Litigation Panel. Member: The Association of the Bar of the City of New York (Committee on Federal Courts); New York County Lawyers' Association (Former Chair: Business Tort/Consumer Fraud-Tort Law Section); Brooklyn (Member: Committee on Civil Practice Law and Rules, 1983-; Committees on Legislation and Federal Courts, 1984-), New York State (Member: Committee on Legislation, Trial Lawyers Section, 1981- ); Committee on Securities, Commercial and Federal Litigation Section, 1989- ), and American (Member: Sections on: Litigation; International Law; Individual Rights and Responsibilities) Bar Associations; the District of Columbia Bar; and Legislation and Civil Practice Law and Rules Committee of the Brooklyn Bar Association. Mr. Isquith has been Chairman of the Business Tort/Consumer Fraud Committee of the Tort Law Section of the New York State Bar Association and is a member of that association's Committees on Securities Law and Legislation. He has served as a judge for the Moot Court Competition of Columbia University Law School and Fordham University's National Competition. Mr. Isquith served as President of the National Association of Securities and Commercial Law Attorneys in 2003 and 2004. The April 1987 issue of *Venture* magazine listed Mr. Isquith as among the nation's top securities class action attorneys.

**JEFFREY G. SMITH**: *admitted:* New York; California; Supreme Court of the United States; U.S. Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Eighth and Ninth Circuits; U.S. Tax Court; U.S. District Courts for the Southern and Eastern Districts of New York, Southern and Central Districts of California and the Districts of Colorado and Nebraska. *Education*: Vassar College (A.B., *cum laude generali*, 1974); Woodrow Wilson School of Public and International Affairs, Princeton University (M.P.A., 1977); Yale Law School (J.D., 1978). At Yale Law School, Mr. Smith was a teaching

14



assistant for the Trial Practice course and a student supervisor in the Legal Services Organization, a clinical program. Member: The Association of the Bar of the City of New York; New York State and American (Section on Litigation) Bar Associations; State Bar of California (Member: Litigation Section). Mr. Smith has frequently lectured on corporate governance issues to professional groups of Fund trustees and investment advisors as well as to graduate and undergraduate business student groups, and regularly serves as a moot court judge for the A.B.A. and at New York University Law School. Mr. Smith has substantial experience in complex civil litigation, including class and derivative actions, tender offer, merger, and takeover litigation.

**FRANCIS M. GREGOREK**: *admitted*: New York; California; U.S. Courts of Appeals for the District of Columbia and Ninth Circuit; U.S. District Courts for the Eastern and Southern Districts of New York, and Central, Southern and Northern Districts of California; *Education*: University of Virginia (B.A., with high distinction, 1975); New York University (J.D., 1978); Durham University, Durham, England. Phi Beta Kappa; Phi Alpha Theta. Member: State Bar of California; American Bar Association.

**MARY JANE FAIT**: *admitted*: New York; Illinois; U.S. District Courts for the Southern and Eastern Districts of New York, and Northern District of Illinois; U.S. Court of Appeals for the Seventh Circuit. *Education*: St. John's College and University of Illinois (B.A., Economics, 1976); Cornell Law School (J.D., 1979). Member: Chicago Bar Association; Illinois Bar Association; Antitrust Division of the American Bar Association.

**PETER C. HARRAR**: *admitted*: New York; U.S. District Courts for the Southern, Eastern and Northern Districts of New York. *Education*: Princeton University (A.B., with high honors, 1980); Columbia University (J.D., 1984). Phi Beta Kappa. Mr. Harrar has extensive experience in complex securities and commercial litigation on behalf of individual and institutional clients.

**LAWRENCE P. KOLKER**: *admitted*: New York; U.S. Courts of Appeals for the Second and Eleventh Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, Western District of Michigan and the District of Colorado. *Education*: State University of New York at Binghamton (B.A., 1978); Brooklyn Law School (J.D., 1983). Editor, *Brooklyn Law Review*, 1982-1983. Panelist, Early Neutral Evaluator for the Eastern District of New

15

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP



York, 1992-1997. Lecturer, Brooklyn Law School, 1989. Assistant Corporation Counsel, City of New York, 1983-1987. Member: The Association of the Bar of the City of New York; New York State Bar Association. Mr. Kolker has spoken at numerous conferences of the Investment Program Association and the Strategic Research Institute concerning limited partnership tender offers and litigation strategies, and has published articles entitled "Litigation Strategies for Limited Partnership Tender Offers" (February 1996) and "Limited Partnership Five Percent Tender Offers" (October 1997) in Standard & Poor's *Review of Securities and Commodities Regulation*. Mr. Kolker has acted as lead counsel in numerous class and derivative actions asserting the rights of investors since joining Wolf Haldenstein in 1989. Mr. Kolker also counsels investment management firms in transactional and securities matters and represents them in corporate and business litigation.

**MARK C. RIFKIN:** *admitted:* New York; Pennsylvania; New Jersey; U.S. Supreme Court; U.S. Courts of Appeals for the Second, Third, Fifth, and D.C. Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, the Eastern and Western Districts of Pennsylvania, the District of New Jersey, the Eastern District of Wisconsin and the Western District of Michigan. *Education:* Princeton University (A.B., 1982); Villanova University School of Law (J.D. 1985). Contributor, PACKEL & POULIN, *Pennsylvania Evidence* (1987). Mr. Rifkin has extensive experience in complex class and derivative actions in securities, ERISA, antitrust, intellectual property, and consumer protection litigation. Mr. Rifkin has extensive trial experience in class and derivative actions, including *In re National Media Corp. Derivative Litig.*, C.A. 90-7574 (E.D.Pa.), *Upp v. Mellon Bank, N.A.*, C.A. No. 91-5229 (E.D.Pa.), where the verdict awarded more than $60 million in damages to the Class (later reversed on appeal, 997 F.2d 1039 (3d Cir. 1993)), and *In re AST Research Securities Litigation*, No. 94-1370 SVW (C.D. Cal.), as well as a number of commercial matters for individual clients. Mr. Rifkin has lectured before diverse business and professional organizations in the areas of securities and complex litigation and corporate governance, serves as a moot court judge for the A.B.A. and at New York University Law School, and is a frequent guest lecturer to graduate and undergraduate economics and finance students on corporate governance topics.

**MICHAEL JAFFE:** *admitted:* California; New York; U.S. District Courts for the Southern and Eastern Districts of New York. *Education:* University of

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP



California at Berkeley (B.S., with highest distinction, 1982); Hastings College of the Law, University of California (J.D., 1987). Judicial Extern to the Honorable Thelton E. Henderson, Northern District of California, 1986-1987. Member: The Association of the Bar of the City of New York. Languages: French.

**BETSY C. MANIFOLD**: *admitted*: Wisconsin; New York; California; U.S. District Courts for the Western District of Wisconsin, Eastern and Southern Districts of New York, and Northern, Central and Southern Districts of California. *Education*: Elmira College; Middlebury College (B.A., *cum laude*, 1980); Marquette University (J.D., 1986); New York University. Thomas More Scholar. Recipient, American Jurisprudence Award in Agency. Member: The Association of the Bar of the City of New York. Languages: French.

**GREGORY M. NESPOLE**: *admitted*: New York; U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: Bates College (B.A., 1989); Brooklyn Law School (J.D., 1993). Member: The Association of the Bar of the City of New York; New York State Bar Association. Mr. Nespole's experience includes complex civil and criminal litigation.

**DAVID L. WALES**: *admitted*: New York; District of Columbia; United States Court of Appeals for the Second and Fourth Circuits, the United States District Courts for the Southern, Eastern and Western Districts of New York, and the District of Columbia. *Education*: State University of New York, Albany (B.A., *magna cum laude*, 1984); Georgetown University Law Center, (J.D., *cum laude*, 1987); Notes and Comments Editor, *Georgetown Journal of Law and Technology*. Mr. Wales is a member of the Federal Bar Council and the Federal Courts Committee of the New York County Lawyers Association, and is AV rated by Martindale Hubbell. Mr. Wales is an experienced trial and appellate attorney who specializes in handling complex securities and class action litigation. Mr. Wales was an Assistant United States Attorney for the Southern District of New York (1992-1998), where he specialized in investigating and prosecuting fraud and white collar criminal cases. Mr. Wales has personally tried more than 15 federal jury trials, and his recent trials include: (i) a jury verdict in May 2005 for more than $11 million, including $1 million in punitive damages, in a derivative action against the general partner of a hedge fund; and (ii) a multi-million dollar settlement with an accounting firm reached during trial of a class action in April 2003. Mr. Wales has been lead or co-lead counsel

17

in numerous securities class actions and derivative actions, including; *In re Sepracor Corp. Securities Litigation*, C.A. No. 02-12338 (D. Mass.) ($52,500,000 recovery in securities fraud class action); *In re Luxottica Group S.p.A. Securities Litigation*, CV-01-3285 (E.D.N.Y.) ($18,250,000 recovery in a Williams Act case); *In re Marque Partners L.P. Derivative Action*, No. 01-604724 (Sup. Ct., N.Y. Co.) ($11,000,000 jury verdict in a derivative action); *In re Jennifer Convertibles Securities Litigation*, CV-94-5570 (E.D.N.Y.) ($9,550,000 recovery, part of the recovery obtained in the middle of trial); and *In re Curative Health Services Securities Litigation*, CV-99-2074 (E.D.N.Y.) ($10,500,000 recovery in a securities fraud action).



**DEMET BASAR:** *admitted:* New York; New Jersey; U.S. District Court for the District of New Jersey, Southern District of New York, and Eastern District of Wisconsin. *Education:* Fairleigh Dickinson University (B.A., *summa cum laude*, 1984), Phi Omega Epsilon; Rutgers University School of Law (J.D., 1990). Recipient, West's Scholarship Award, Senior Notes and Comments Editor, *Rutgers Law Review*. Member: The Association of the Bar of the City of New York. Languages: Turkish.

**ADAM J. LEVITT:** *admitted:* Illinois; Supreme Court of the United States; U.S. Courts of Appeals for the First and Seventh Circuits; U.S. District Courts for the Northern and Southern Districts of Illinois, Northern District of Indiana, District of Nebraska, District of Colorado, and the Northern and Eastern Districts of Texas. *Education:* Columbia College, Columbia University (A.B., *magna cum laude*, 1990); Northwestern University School of Law (J.D., 1993). *Member:* American Law Institute (Members Consultative Groups: Principles of the Law of Aggregate Litigation, the Restatement of the Law (Third) Restitution and Unjust Enrichment, and the Restatement of the Law (Third) Torts: Liability for Economic Loss); Seventh Circuit Contributing Editor, *Class Actions & Derivative Suits* (ABA); Consulting Participant: "Calculation of Securities Litigation Damages" (National Association of Public Pension Attorneys, Securities Litigation Damages Calculation Taskforce). *Publications:* Foreign Investors Serving as Lead Plaintiffs in U.S.-Based Securities Cases, International Practice Section Newsletter (Association of Trial Lawyers of America, Washington, D.C.), Winter 2004 and Spring 2005.; Proposed Rule 225: A Death Warrant for Class Actions in Illinois, 93 Illinois Bar Journal 202 (2005); The Big Business Wish List: Proposed Illinois Supreme Court Rule 225 and the Demolition of Consumer Rights, The Class Act (The Newsletter of the National Association of Securities and Consumer Law Attorneys), February 25, 2005;

18

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP



and An Illinois Lawyer's Guide to Service of Process in Mexico, 82 Illinois Bar Journal 434 (1994).  Mr. Levitt has also testified before the Illinois Supreme Court Rules Committee on class action practice and related issues. Mr. Levitt regularly serves as a moot court judge in the Julius H. Miner Moot Court Competition, Northwestern University School of Law.  In recognition of his achievements to date, Mr. Levitt was named one of the "40 Illinois Attorneys Under 40 Years Old to Watch" by the *Chicago Daily Law Bulletin* and the *Chicago Lawyer*.  He is rated "AV" by Martindale-Hubbell.

Substantially all of Mr. Levitt's practice is focused on complex commercial litigation and class action practice on both the trial and appellate court levels, in federal and state courts nationwide, in the areas of securities, consumer protection, technology, and agricultural law. Since 1993, Mr. Levitt has served as lead counsel, co-lead counsel, or in other leadership positions in numerous class and other complex litigations throughout the United States, including *In re StarLink Corn Products Liability Litigation*, MDL No. 1403 (N.D. Illinois) (recovered $110 million for U.S. corn farmers who sustained market losses arising from defendants' contamination of the U.S. food corn supply with an improperly bioengineered corn seed product); *Court Reporting Services, et al. v. Compaq Computer Corporation*, C.A. No. 02 CV 044 (E.D. Texas) (obtained full recovery, valued at not less than $35 million, on behalf of Compaq Presario purchasers with improperly partitioned hard disk drives); and various Internet privacy cases, including *Supnick v. Amazon.com, Inc.* (W.D. Wash.) and *In re DoubleClick, Inc. Privacy Litigation* (S.D.N.Y.).

Mr. Levitt is currently co-lead counsel in a series of thirteen class action lawsuits against the Monsanto Company, Pioneer Hi-Bred International, and E.I. DuPont de Nemours and Company, predicated upon those companies' alleged improper conduct arising from their sale of genetically-engineered soybean and corn seeds or traits; is Class Counsel in *In re Aon ERISA Litigation* (ERISA class action lawsuit on behalf of all participants and beneficiaries of Aon's 401(k) savings plan against Aon and certain of its officers and directors, alleging that during the class period, defendants, as fiduciaries of the Plan, each violated ERISA by breaching their duties owed to plaintiffs and the other participants and beneficiaries of the Plan in connection with the Plan's holding of Aon stock); and was recently appointed Designated Co-Lead and Co-Interim Class Counsel in *In Re Genetically Modified Rice Litigation*, MDL 1811 (E.D. Mo.), in which he is

19



representing the interests of United States long-grain rice producers seeking to recover damages they sustained resulting from the contamination of the U.S. rice supply with unapproved, genetically-modified rice seed traits developed and tested by Bayer CropScience LP and related entities. Mr. Levitt is also actively involved in the *In re Initial Public Offering Sec. Litig.*, Master File No. 21 MC 92 (SAS) (S.D.N.Y.) (consolidated action against 309 issuers and 55 underwriters alleging manipulation, misrepresentations, and omissions relating to the market for various high-tech initial public offerings), and also recently served as lead counsel in *In re Comdisco Securities Litigation* (securities class action lawsuit against former Comdisco executives relating to Comdisco's misrepresentations and omissions with respect to its Prism division). Mr. Levitt also provides, or has provided legal services to various private companies involving complex litigation and general corporate matters.

**THOMAS H. BURT:** *admitted*: New York; U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: American University (B.A., 1993); New York University (J.D., 1997). Articles Editor with New York University Review of Law and Social Change.



OF COUNSEL

**ROBERT ABRAMS:** *admitted*: New York; U.S. Court of Appeals for the Third Circuit; U.S. District Courts for the Southern and Eastern Districts of New York, Eastern District of Missouri, District of Maryland, and District of Delaware. *Education:* Haverford College (B.A., 1961); Columbia University (Ph.D., 1966), Brooklyn Law School (J.D., 1992). Woodrow Wilson Fellow; International Business Law Fellow. Adjunct Professor, Mediation Clinic, Brooklyn Law School, 1983-1984. Mr. Abrams was formerly a Professor of Political Science at Brooklyn College and the Graduate Center of the City University of New York. Member: New York State Bar Association. Mr. Abrams is the author of books on the theory of collective choice (Columbia University Press) and voting theory (Sage), as well as articles on Soviet politics, game theory and bargaining and negotiations. He has focused his practice on complex securities, ERISA, and consumer actions.

**ROBERT B. WEINTRAUB:** *admitted*: New York; Supreme Court of the United States; U.S. Court of Appeals for the Federal and Second Circuits; District of Columbia; U.S. District Courts for the Southern and Eastern

20



Districts of New York. *Education*: Syracuse University (B.A., *cum laude*, 1972); Georgetown University Law Center (J.D., 1977). Member: 1975-1977, Articles Editor and Member: Executive Board, 1976-1977, Law and Policy in International Business, *Georgetown International Law Journal*. Assistant Editor, Competition Working Group, "The OECD Guidelines for Multinational Enterprises: A Business Appraisal," 1977. Author, "Law Backs Women Warriors," *National Law Journal*, June 7, 1993. Co-contributor: Chapter 7, "The Celler-Kefauver Act of 1950," 4 *Legislative History of the Federal Antitrust Laws and Related Statutes*, edited by E. Kintner, Chelsea House Publishers, 1980. Mediator, U.S. District Court, Southern District of New York. Member: The Association of the Bar of the City of New York (Member: Committee on Securities Regulation; Council on International Affairs; Chair, 1991-1994 and Member: 1987-1990, Committee on Military Affairs and Justice; International Arms Control and Security Affairs, 1990-1991); and American Bar Association. He has counseled corporations on contract negotiation and antitrust matters, and provided antitrust advice on mergers to the arbitrage department of a major brokerage house. He has served as an arbitrator for the NYSE, the NASD and the Municipal Securities Rulemaking Board and as a mediator for the federal District Court in New York. Mr. Weintraub also previously served as Senior Vice President and General Counsel of a broker-dealer investment bank which is a member of the NYSE, the NASD and other principal exchanges. Mr. Weintraub has particular experience in litigation involving investment firms and broker-dealers.



### ASSOCIATES

**THEODORE B. BELL:** *admitted:* Michigan; Illinois; 7th Circuit Court of Appeals; United States District Courts for the Northern, Central and Southern Districts of Illinois. *Education:* University of Michigan (B.A., 1988); University of Detroit Mercy School of Law (J.D., 1992).

**RACHELE R. RICKERT:** *admitted*: California; U.S. District Court for the Southern District of California. *Education*: Point Loma Nazarene College (B.A., 1994); University of California, Hastings College of the Law (J.D., 1997). Member: State Bar of California. Former Deputy Alternate Public Defender for the County of San Diego.

**SCOTT J. FARRELL:** *admitted:* New York; New Jersey; U.S. District Courts for the Southern and Eastern Districts of New York, the District of New

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP

Jersey, and the District of Colorado. *Education*: Yeshiva University (B.A., *magna cum laude*, 1996), where he was a Max Stern Scholar and Gruss Scholar; New York University School of Law (J.D., 1999), where he was an Article and Note Editor of the *Journal of Legislation and Public Policy*. He is the co-author of "In re Gary Glass and Zoltan Guttman," CFTC Docket No. 93-4, *Futures & Derivatives Law Report*, July/August, 1998.



KATE MCGUIRE: *admitted*: New York; U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: University of California at Santa Cruz (B.A. 1995), Georgetown University Law Center (J.D., 1998); Member: *Georgetown Immigration Law Journal*.

GUSTAVO BRUCKNER: *admitted*: New York; New Jersey; United States District Courts for the Districts of New Jersey, Eastern District of New York, and the Southern District of New York; the United States Court of Appeals for Second Circuit and the Supreme Court of the United States. *Education*: New York University (B.S., 1988); New York University (M.B.A. 1989); Benjamin N. Cardozo School of Law, Yeshiva University (J.D., 1992).

STACEY T. KELLY: *admitted*: New York; New Jersey; U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: New York University (B.A., 1997); Rutgers School of Law - Newark (J.D., 2000). Member: New York State Bar Association; New York County Lawyers Association

PAULETTE S. FOX: *admitted*: New York; New Jersey U.S. District Courts for the Southern and Eastern Districts of New York. *Education*: Benjamin N. Cardozo School of Law (J.D. 2001); Syracuse University (B.A. in Public Policy, *summa cum laude*, Phi Beta Kappa, 1998).

MATTHEW GUINEY: *admitted*: New York. *Education*: The College of William & Mary (B.A. in Government and Economics 1998); Georgetown University Law Center (J.D. 2002).

MARTIN RESTITUYO: *admitted*: New York. *Education*: Queens College (B.A., 1998); Hofstra University School of Law (J.D. 2002); Hofstra University, Frank G. Zarb School of Business (M.B.A., Finance, 2005). Mr. Restituyo did postgraduate work at the Universidad Autonoma de Santo Domingo, Santo Domingo, in the Dominican Republic, and studied at Faculte de Droit de l'Universite de Nice, in Nice, France. Mr. Restituyo was the Assistant Town Attorney for North Hempstead, New York (2004-2006),

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP



an Adjunct Professor at John Jay College of Criminal Justice (2005), and was in the Nassau County Department of Economic Development (2002-2004). In 2003, he was awarded the "Distinguished Alumni Award" from Hofstra University's Clinical Program. He is a member of the Nassau County Bar Association, the Women's Bar Association, the Hispanic Bar Association, the Dominican Bar Association and Hofstra University School of Law, Alumni Board.

**MARISA C. LIVESAY:** *admitted*: California; U.S. Court of Appeals for the Ninth Circuit; U.S. District Courts for the Central, Southern and Northern Districts of California. *Education*: University of Arizona (B.A. 1999, Dean's List with Distinction), where she served on the Associated Student Senate; University of California, Los Angeles (J.D. 2002, Corporate Specialization), where she was a member of the Moot Court Executive Board and staff member of the Journal of International Law and Foreign Affairs. Member: State Bar of California.

**IONA M. EVANS:** *admitted*: New York. *Education*: University of New Hampshire (B.A., 1999); Boston University School of Law (J.D., 2004), where she served as Staff Writer and Business Editor on the *International Law Journal*.

**GEORGE T. PETERS:** *admitted*: New York, U. S. District Courts for the Southern & Eastern Districts of New York. *Education*: Eastern Illinois University, B.A. 1991; attended Howard University School of Law and fulfilled remaining law studies at Wolf Haldenstein Adler Freeman and Herz LLP. Member of the New York State Bar Association.

**ALEXANDRA SILVERBERG:** *admitted*: New York. *Education*: Brandeis University (B.A. in Politics and concentration in Film Studies); Brooklyn Law School, (J.D. 2004). Member: New York County Lawyer's Association.

**RACHEL S. POPLOCK:** *admitted:* New York, U.S. District Courts for the Southern & Eastern Districts of New York. *Education:* Cornell University (B.S. Human Development, 2002), Fordham Law School (J.D. 2005) where she was a member of the Fordham Urban Law Journal and received the Archibald R. Murray Public Service Award for her participation in the Family Advocacy Clinic.

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP



**LAURENCE J. HASSON**:  *admitted*: New York, U.S. District Courts for the Southern & Eastern Districts of New York.  *Education*: Brandeis University (B.A. History and American Studies, *magna cum laude*, Phi Beta Kappa and Phi Alpha Theta honors, 2003); Benjamin N. Cardozo School of Law (J.D. 2006) where Mr. Hasson was an Heyman Scholar at the Samuel and Ronnie Heyman Center on Corporate Governance, a Memorandum of Law Editor, and an executive board member of the Moot Court Honor Society; Oxford University (Seminar on comparative corporate governance, Summer 2005). Prior to joining the firm, Mr. Hasson interned at Cardozo's Bet Tzedek Legal Services Clinic, representing elderly and disabled people seeking health, disability, and housing benefits that they could not receive without clinical assistance.

### WOLF HALDENSTEIN PARTNERS WHO REGULARLY PROVIDE THEIR NON-LITIGATION EXPERTISE TO CLASS ACTION LITIGATION MATTERS

**CHARLES H. BALLER**:  *admitted*:  New York.  *Education*: New York University (B.S., *magna cum laude*, 1954); Columbia University (LL.B., 1957); New York University (L.L.M., Taxation, 1962).  Beta Gamma Sigma; Beta Alpha Psi. Harlan Fiske Stone Scholar.  Co-Editor and Contributing Author, April, 1981, with 1986 Supplement, *Business Acquisitions*, Practicing Law Institute. Member: The Association of the Bar of the City of New York; New York State and American Bar Associations.  Mr. Baller has worked in the office of Chief Counsel, Internal Revenue Service (Interpretative Division). A lecturer and author for the Practicing Law Institute (co-editor of the reference work *Business Acquisitions: Planning and Practice*), Mr. Baller is a corporate and tax attorney with extensive expertise in mergers and acquisitions, complex estate planning (particularly relating to corporate and business holdings), and employee benefits and compensation, including ERISA.

**ERIC B. LEVINE**:  *admitted*:  New York; U.S. Courts of Appeals for the Second and Eleventh Circuits; U.S. District Courts for the Southern and Eastern Districts of New York, and Eastern District of Michigan; U.S. Tax Court.  *Education*:  State University of New York at Buffalo (B.A., *summa cum laude*, 1974); University of Pennsylvania (J.D., *cum laude*, 1977).  Order of the Coif, Phi Beta Kappa. Associate Editor, *University of Pennsylvania Law Review*, 1976-1977.  Member: The Association of the Bar of the City of New

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP



York; New York State Bar Association.  Mr. Levine's practice focuses on complex commercial and civil litigation, including in the area of bankruptcy and receivership litigation, creditors' rights, and lender liability.

**MARK C. SILVERSTEIN**: *admitted*: New York.  *Education*: State University of New York at Binghamton (B.S., *summa cum laude*, 1980); New York University (J.D., *cum laude*, 1983).  Order of the Coif.  Editor, Journal of International Law and Politics, 1982-1983.  Member: the Association of the Bar of the City of New York; New York State; American Bar Associations. Mr. Silverstein serves as general counsel to corporations and handles matters involving tax planning and mergers and acquisitions.  He also provides counseling in the structure of complex settlements and the administration of complex claims administrations.

**ELI D. GREENBERG**:  *admitted*:  New York.  *Education*: New York University (B.S., *magna cum laude*, 1981.  New York University (J.D., 1984). Beta Gamma Sigma. Lecturer, New York University.  Member: American Health Lawyers Association.  Mr. Greenberg has extensive experience in pension, tax, benefits, and ERISA.



SUBSTANTIAL RECOVERIES OBTAINED IN REPRESENTATIVE PAST CLASS ACTION CASES IN WHICH WOLF HALDENSTEIN WAS LEAD COUNSEL OR HAD ANOTHER SIGNIFICANT ROLE

- *In re BankAmerica Corp. Securities Litigation*, MDL Docket No. 1264 (JFN) (E.D. Mo.) (class recovered $490 million).

- *In re Dynamic Random Access Memory Antitrust Litigation*, (MD-02 1486 (N.D. Cal.) (class recovered $325 million).

- *In re MicroStrategy, Inc. Securities Litigation*, Civ. No. 00-473-A (E.D. Va.) (class recovered $160 million in cash and securities).

- *Kurzweil v. Philip Morris Cos.*, 94 Civ. 2373, 94 Civ. 2546 (S.D.N.Y.) (securities fraud) (class recovered $116.5 million in cash).

- *In re Starlink Corn Products Liability Litigation*, (N.D. Ill.) (class recovered $110 million).

- *In Computer Associates 2002 Class Action Sec. Litigation*, 2:02-CV-1226 (E.D.N.Y.) ($130 million settlement in this and two related actions).

- *In re Sepracor Inc. Securities Litigation*, Civ. No. 02-12338 (MEL) (D. Mass.) (classes recovered $52.5 million).

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP



- *In re Merrill Lynch & Co., Inc. Global Technology Fund Securities Litigation,* 02 CV 7854 (JFK) (SDNY); and *In re Merrill Lynch & Co., Inc. Focus Twenty Fund Securities Litigation*, 02 CV 10221 (JFK) (SDNY) (class recovered $39 million in combined cases).

- *In re CNL Hotels & Resorts, Inc. Securities Litigation,* No. 6:04-cv-1231 (Orl-31) (class recovered $35 million, and lawsuit also instrumental in $225 million benefit to corporation).

- *Berger v. Compaq Computer Corp.,* Docket No. 98-1148 (S.D. Tex.) (class recovered $29 million).

- *In re Arakis Energy Corporation Securities Litigation,* 95 CV 3431 (E.D.N.Y.) (class recovered $24 million in cash).

- *In re E.W. Blanche Holdings, Inc. Securities Litigation*, Civ. No. 01-258 (D. Minn.) (class recovered $20 million).

- *In re Globalstar Securities Litigation,* Case No. 01-CV-1748 (SHS) (S.D.N.Y.) (class recovered $20 million).

- *In re Luxottica Group S.p.A. Securities Litigation,* No. CV 01-3285 (E.D.N.Y) (class recovered $18.25 million).

- *In re Musicmaker.com Securities Litigation,* CV-00-2018 (C.D. Cal.) (class recovered $13.75 million).

- *In re Comdisco Securities Litigation,* No. 01 C 2110 (MIS) (N.D. Ill.) (class recovered $13.75 million).

- *In re Acclaim Entertainment, Inc., Securities Litigation,* C.A. No. 03-CV-1270 (E.D.N.Y.) (class recovered $13.65 million).

- *In re Concord EFS, Inc. Securities Litigation*, No. 02-2097 (MA) (W.D. Tenn) (class recovered $13.25 million).

- *In re Bausch & Lomb, Inc. Securities Litigation,* 01 Civ. 6190 (CJS) (W.D.N.Y.) (class recovered $12.5 million).

- *In re Allaire Corp. Securities Litigation,* 00-11972 (D. Mass.) (class recovered $12 million).

- *Bamboo Partners LLC v. Robert Mondavi Corp.,* No. 26-27170 (Cal. Sup. Ct.) (class recovered $10.8 million).

- *Curative Health Services Securities Litigation,* 99-2074 (E.D.N.Y.) (class recovered $10.5 million).

26

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP





- *City Partnership Co. v. Jones Intercable*, 99 WM-1051 (D. Colo.) (class recovered $10.5 million).

- *In re Tenfold Corporation Securities Litigation*, 2:00-CV-652 (D. Utah) (class recovered $5.9 million).

- *In re Realogy Corp. Shareholder Litigation*, No. 2621-N (Del. Ch.).

- *In re Industrial Gas Antitrust Litigation*, 80 C 3479 and related cases (N.D. Ill.) (class recovered $50 million in cash and coupons).

- *In re Chor-Alkalai and Caustic Soda Antitrust Litigation*, 86-5428 and related cases (E.D. Pa.) (class recovered $55 million).

- *In re Infant Formula Antitrust Litigation*, MDL No. 878 (N.D. Fla.) (class recovered $126 million).

- *In re Brand Name Prescription Drug Antitrust Litigation*, M.D.L. 940 (N.D. Ill.) (class recovered $715 million).

- *Landon v. Freel*, M.D.L. No. 592 (S.D. Tex.) (class recovered $12 million).

- *Holloway v. Peat, Marwick, Mitchell & Co.*, No. 84 C 814 EU (N.D. Okla.) (class recovered $38 million).

- *In re The Chubb Corp.* Drought Insurance Litigation, C-1-88-644 (S.D. Ohio) (class recovered $100 million.).

- *Wong v. Megafoods*, Civ-94-1702 (D. Ariz.) (securities fraud) (class recovered $12.25 million).

- *In re Del Val Financial Corp. Securities Litigation*, 92 Civ 4854 (S.D.N.Y.) (class recovered $11.5 million).

- *In re Home Shopping Network Shareholders Litigation*, Consolidated Civil Action No. 12868, (Del. Ch. 1995) (class recovered $13 million).

- *In re Paine Webber Limited Partnerships Litigation*, 94 Civ 8547 (S.D.N.Y.) (class recovered $200 million).

- *In re Bristol-Meyers Squibb Co. Securities Litigation*, 92 Civ 4007 (S.D.N.Y.) (class recovered $19 million).

- *In re Spectrum Information Technologies Securities Litigation*, CV 93-2245 (E.D.N.Y.) (class recovered $13 million).

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP





- *In re Chase Manhattan Securities Litigation,* 90 Civ. 6092 (LJF) (S.D.N.Y.) (class recovered $17.5 million).

- *Prostic v. Xerox Corp.,* No. B-90-113 (EBB) (D. Conn.) (class recovered $9 million).

- *Steiner v. Hercules,* Civil Action No. 90-442-RRM (D. Del.) (class recovered $18 million).

- *In re Ambase Securities Litigation,* 90 Civ 2011 (S.D.N.Y.) (class recovered $14.6 million).

- *Steiner v. Phillips (In re Southmark Securities Litigation),* CA No. 3-89-1402-D (N.D. Tex.) (class recovered $70 million).

- *Steiner v. Ideal Basic Industries, Inc.,* No. 86-M 456 (D. Colo. 1989) (securities fraud) (class recovered $18 million).

- *Tucson Electric Power Derivative Litigation,* 2:89 Civ. 01274 TUC. ACM (corporation recovered $30 million).

- *Alleco Stockholders Litigation,* (Md.Cir.Ct. Pr. Georges County) (class recovered $16 million).

- *In re Revlon Group, Inc. Shareholders Litigation,* No. 8362 (Del. Ch.) (class recovered $30 million).

- *In re Taft Broadcasting Company Shareholders Litigation,* No. 8897 (Del. Ch.) (class recovered $20 million).

- *In re Southland Corp. Securities Litigation,* No. 87-8834-K (N.D.Tex.) (class recovered $20 million).

- *In re Crocker Bank Securities Litigation,* CA No. 7405 (Del. Ch.) (class recovered $30 million).

- *In re Warner Communications Securities Litigation,* No. 82 Civ. 8288 (JFK) (S.D.N.Y.) (class recovered $17.5 million).

- *Joseph v. Shell Oil,* CA No. 7450 (Del. Ch.) (securities fraud) (class recovered $200 million).

- *In re Flight Transportation Corp. Securities Litigation,* Master Docket No. 4-82-874, MDL No. 517 (D. Minn.) (class recovered $50 million.).

- *In re Whittaker Corporation Securities Litigation,* CA000817 (Cal. Super. Ct., Los Angeles County) (class recovered $18 million).

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP

- *Naevus International, Inc. v. AT&T Corp.,* C.A. No. 602191/99 (N.Y. Sup. Ct.) (consumer fraud) (class recovered $40 million).

- *Sewell v. Sprint PCS Limited Partnership*, C.A. No. 97-188027/CC 3879 (Cir. Ct. for Baltimore City) (consumer fraud) (class recovered $45.2 million).





### REPRESENTATIVE REPORTED OPINIONS SINCE 1990 IN WHICH WOLF HALDENSTEIN WAS LEAD COUNSEL OR HAD ANOTHER SIGNIFICANT ROLE

### FEDERAL APPEALS COURT OPINIONS

- *Harzewski v. Guidant Corp.,* 489 F.3d 799 (7th Cir. 2007).

- *In re Pharmatrak, Inc. Privacy Litig.,* 2003 U.S. App. LEXIS 8758 (1st Cir. May 9, 2003).

- *Berger v. Compaq Computer Corp.,* 257 F.3d 475 (2001), clarified, 279 F.3d 313 (5th Cir. 2002).

- *In re Bankamerica Corp. Securities Litigation*, 263 F.3d 795 (8th Cir. 2001).

- *Wright v. Ernst & Young LLP,* 152 F.3d 169 (2d Cir. 1998).

- *Romine v. Compuserve Corp.,* 160 F.3d 337 (6th Cir. 1998).

- *Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998).

- *Brown v. Radica Games (In re Radica Games Securities Litigation),* No. 96-17274, 1997 U.S. App. LEXIS 32775 (9th Cir. Nov. 14, 1997).

- *Robbins v. Koger Properties,* 116 F.3d 1441 (11th Cir. 1997).

- *In re Painewebber Inc. Limited Partnerships Litigation,* 94 F.3d 49 (2d Cir. 1996).

- *Glassman v. Computervision Corp.,* 90 F.3d 617 (1st Cir. 1996).

- *Alpern v. Utilicorp United, Inc.,* 84 F.3d 1525 (8th Cir. 1996).

- *Shaw v. Digital Equipment Corp.,* 82 F.3d 1194 (1st Cir. 1996).

- *Riley v. Simmons*, 45 F.3d 764 (3d Cir. 1995).

- *Stepak v. Addison,* 20 F.3d 398 (11th Cir. 1994).

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP



- *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295 (2d Cir. 1990).

## FEDERAL DISTRICT COURT OPINIONS

- *Schoenbaum v. E.I. Dupont De Nemours and Co.,* 2007 WL 2768383 (E.D. Mo. Sept. 20, 2007).

- *Jeffries v. Pension Trust Fund,* 99 Civ. 4174 (LMM), 2007 U.S. Dist. LEXIS 61454 (S.D.N.Y. Aug. 20, 2007).

- *Klein v. Ryan Beck,* 06-Civ. 3460 (WCC), 2007 U.S. Dist. LEXIS 51465 (S.D.N.Y. July 13, 2007).

- *Cannon v. MBNA Corp.* No. 05-429 GMS, 2007 U.S. Dist. LEXIS 48901 (D. Del. 2007).

- *In re Aquila ERISA Litig.,* 237 F.R.D. 202 (W.D. Mo. 2006).

- *Smith v.* Aon Corp., 238 F.R.D. 609 (N.D. Ill. 2006).

- *In re Sepracor Inc. Securities Litigation,* 233 F.R.D. 52 (D. Mass. 2005).

- *In re Transkaryotic Therapies, Inc. Securities Litigation,* No. 03-10165, 2005 U.S. Dist. LEXIS 29656 (D. Mass. Nov. 28, 2005).

- *In re Luxottica Group, S.p.A. Securities Litigation,* 2005 U.S. Dist. LEXIS 9071 (E.D.N.Y. May 12, 2005).

- *In re CNL Hotels & Resorts, Inc. Securities Litigation,* 2005 U.S. Dist. LEXIS 38876, No. 6:04-cv-1231-Orl-31KRS (M.D. Fla. May 9, 2005).

- *Johnson v. Aegon USA, Inc.,* 1:01-CV-2617 (N.D. Ga. Sept. 20, 2004).

- *Freeland v. Iridium World Communications, Ltd.,* 99-1002 (D.D.C. Aug. 31, 2004).

- *In re Acclaim Entertainment, Inc. Securities Litigation,* 03-CV-1270 (E.D.N.Y. June 22, 2004).

- *In re Sepracor Inc. Securities Litigation,* 308 F. Supp. 2d 20 (D. Mass. 2004).

- *In re Concord EFS, Inc. Securities Litigation,* No. 02-2697 (W.D. Tenn. Jan. 7, 2004).

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP





- *In re Enterprise Mortgage Acceptance Co., LLC, Sec. Litig.,* 02-Civ. 10288 (SWK) (S.D.N.Y. Nov. 5, 2003).

- *In re PerkinElmer, Inc. Securities Litigation,* 286 F. Supp. 2d 46 (D. Mass. 2003).

- *In re Initial Public Offering Securities Litigation,* 241 F. Supp. 2d 281 (S.D.N.Y. 2003).

- *In re Comdisco Securities Litigation,* No. 01 C 2110, 2003 U.S. Dist. LEXIS 5047 (N.D. Ill. Mar. 31, 2003).

- *City Partnership Co. v. Cable TV Fund* 14-B, 213 F.R.D. 576 (D. Colo. 2002).

- *In re Allaire Corporation Securities Litigation,* Docket No. 00-11972 - WGY, 2002 U.S. Dist. LEXIS 18143 (D. Mass., Sept. 27, 2002).

- *In re StarLink Corn Products Liability Litigation,* 212 F.Supp.2d 828 (N.D. Ill. 2002)

- *In re Comdisco Securities Litigation,* 166 F.Supp.2d 1260 (N.D. Ill. 2001).

- *In re Crossroads Systems, Inc. Securities Litigation,* Master File No. A-00-CA-457 JN, 2001 U.S. Dist. LEXIS 14780 (W.D. Tx. Aug. 15, 2001).

- *In re MicroStrategy, Inc. Securities Litigation,* 150 F. Supp. 2d 896 (E.D. Va. 2001).

- *Lindelow v. Hill,* No. 00 C 3727, 2001 U.S. Dist. LEXIS 10301 (N.D. Ill. July 19, 2001).

- *In re MicroStrategy, Inc. Securities Litigation,* 148 F. Supp. 2d 654 (E.D. Va. 2001).

- *Jeffries v. Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Electrical Industry,* 172 F. Supp. 2d 389 (S.D.N.Y. 2001).

- *Carney v. Cambridge Technology Partners, Inc.,* 135 F. Supp. 2d 235 (D. Mass. 2001).

- *Weltz v. Lee,* 199 F.R.D. 129 (S.D.N.Y. 2001).

- *Schoers v. Pfizer, Inc.,* 00 Civ. 6121, 2001 U.S. Dist. LEXIS 511 (S.D.N.Y. Jan. 23, 2001).

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP







- *Kurzweil v. Philip Morris Cos.,* 94 Civ. 2373 (MBM), 2001 U.S. Dist. LEXIS 83 (S.D.N.Y. Jan. 9, 2001).

- *Goldberger v. Bear, Stearns & Co.,* 98 Civ. 8677 (JSM), 2000 U.S. Dist. LEXIS 18714 (S.D.N.Y. Dec. 28, 2000).

- *In re Newell Rubbermaid, Inc., Securities Litigation,* Case No. 99 C 6853, 2000 U.S. Dist. LEXIS 15190 (N.D. Ill. Oct. 2, 2000).

- *Stanley v. Safeskin Corp.,* Case No. 99 CV 454 BTM (LSP), 2000 U.S. Dist. LEXIS 14100, Fed. Sec. L. Rep. (CCH) P91, 221 (S.D. Cal. Sept. 18, 2000).

- *In re MicroStrategy, Inc. Securities Litigation,* 115 F. Supp. 2d 620 (E.D. Va. 2000).

- *In re USA Talks.com, Inc. Securities Litigation,* 2000 U.S. Dist. LEXIS 14823, Fed. Sec. L. Rep. (CCH) P91, 231 (S.D. Cal. Sept. 14, 2000).

- *In re Sotheby's Holdings, Inc. Securities Litigation,* 00 CIV. 1041 (DLC), 2000 U.S. Dist. LEXIS 12504, Fed. Sec. L. Rep. (CCH) P91, 059 (S.D.N.Y. Aug. 31, 2000).

- *Dumont v. Charles Schwab & Co., Inc.,* Civil Action No. 99-2840 2000 U.S. Dist. LEXIS 10906 (E.D. La. July 21, 2000).

- *Berger v. Compaq Computer Corp.,* Civil Action No. H-98-1148, 2000 U.S. Dist. LEXIS 21424 (S.D. Tex. July 17, 2000).

- *In re BankAmerica Corp. Securities Litigation,* 95 F. Supp. 2d 1044 (E.D. Mo. 2000).

- *In re Carnegie International Corp. Securities Litigation,* 107 F. Supp. 2d 676 (D. Md. 2000).

- *Berger v. Compaq Computer Corp.,* Civil Action No. H-98-1148, 2000 U.S. Dist. LEXIS 21423 (S.D. Tex. Mar. 13, 2000).

- *In re Imperial Credit Industries Securities Litigation,* CV 98-8842 SVW, 2000 U.S. Dist. LEXIS 2340 (C.D.Cal. Feb. 23, 2000).

- *Sturm v. Marriott Marquis Corp.,* 85 F. Supp. 2d 1356 (N.D. Ga. 2000).

- *In re Health Management Systems Securities Litigation,* 82 F. Supp. 2d 227 (S.D.N.Y. 2000).

- *Dumont v. Charles Schwab & Co., Inc.,* Civil Action No. 99-2840, 2000 U.S. Dist. LEXIS 619 (E.D. La. Jan. 19, 2000).

32




- *In re MicroStrategy, Inc. Securities Litigation,* 110 F. Supp. 2d 427 (E.D. Va. 2000).

- *In re BankAmerica Corp. Securities Litigation,* 78 F. Supp. 2d 976 (E.D. Mo. 1999).

- *Kurzweil v. Philip Morris Cos.,* 94 Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 24, 1999).

- *In re Nanophase Technologies Corp. Litigation,* 98 C 3450, 1999 U.S. Dist. LEXIS 16171 (N.D. Ill. Sept. 27, 1999).

- *In re Clearly Canadian Securities Litigation,* File No. C-93-1037-VRW, 1999 U.S. Dist. LEXIS 14273 Cal. Sept. 7, 1999).

- *Yuan v. Bayard Drilling Technologies, Inc.,* 96 F. Supp. 2d 1259 (W.D. Okla. 1999).

- *In re Spyglass, Inc. Securities Litigation,* No. 99 C 512, 1999 U.S. Dist. LEXIS 11382 (N.D. Ill. July 20, 1999).

- *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 1:97-CV-3183-TWT, 1999 U.S. Dist. LEXIS 11595 (N.D.Ga. June 30, 1999).

- *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 1:97-CV-3183-TWT, 1999 U.S. Dist. LEXIS 11596 (N.D. Ga. June 30, 1999).

- *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.,* 98 CV 3287, 1999 U.S. Dist. LEXIS 11363 (E.D.N.Y. June 1, 1999).

- Carley Capital Group v. Deloitte & Touche, L.L.P., 1:97-CV-3183-TWT, 1999 U.S. Dist. LEXIS 1368, Fed. Sec. L. Rep. (CCH) P90, 429 (N.D. Ga. Jan. 19, 1999).

- Longman v. Food Lion, Inc., 186 F.R.D. 331 (M.D.N.C. 1999).

- Walsingham v. Biocontrol Technology, Inc., 66 F. Supp. 2d 669 (W.D. Pa. 1998).

- *Sturm v. Marriott Marquis Corp.,* 26 F. Supp. 2d 1358 (N.D. Ga. 1998).

- *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 27 F. Supp. 2d 1324 (N.D. Ga. 1998).

- *In re MobileMedia Securities Litigation,* 28 F.Supp.2d 901 (D.N.J. 1998).

- *Weikel v. Tower Semiconductor, Ltd.,* 183 F.R.D. 377 (D.N.J. 1998).

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP





- *In re Health Management Systems Securities Litigation,* 97 Civ. 1865 (HB), 1998 U.S. Dist. LEXIS 8061 (S.D.N.Y. May 27, 1998).

- *In re Painewebber Ltd. Partnership Litigation,* 999 F. Supp. 719 (S.D.N.Y. 1998).

- *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 1:97-cv-3183-TWT, 1998 U.S. Dist. LEXIS 23222 (N.D. Ga. Feb. 10, 1998).

- *In re TCW/DW North American Government Income Trust Securities Litigation,* 95 Civ. 0167 (PKL), 1997 U.S. Dist. LEXIS 18485 (S.D.N.Y. Nov. 20, 1997).

- *Wright v. Ernst & Young, LLP,* 97 Civ. 2189 (SAS), 1997 U.S. Dist. LEXIS 13630 (S.D.N.Y. Sept. 9, 1997).

- *Felzen v. Andreas,* No. 95-2279, 1997 U.S. Dist. LEXIS 23646 (C.D. Ill. July 7, 1997).

- *Felzen v. Andreas,* No. 95-2279, 1997 U.S. Dist. LEXIS 23647 (C.D. Ill. July 7, 1997).

- *A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.,* 964 F. Supp. 147 (S.D.N.Y. 1997).

- *Kurzweil v. Philip Morris Companies,* 94 Civ. 2373 (MBM), 1997 U.S. Dist. LEXIS 4451 (S.D.N.Y. April 8, 1997).

- *Bobrow v. Mobilmedia, Inc.,* Civil Action No. 96-4715, 1997 U.S. Dist. LEXIS 23806 (D.N.J. March 31, 1997).

- *Kalodner v. Michaels Stores, Inc.,* 172 F.R.D. 200 (N.D.Tex. 1997).

- *In re Painewebber Ltd. Partnerships Litigation,* 171 F.R.D. 104 (S.D.N.Y. 1997).

- *A. Ronald Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Securities, Inc.,* 95 Civ. 8422 (LAK), 1997 U.S. Dist. LEXIS 1226 (S.D.N.Y. Feb. 7, 1997).

- *Dresner Co. Profit Sharing Plan v. First Fidelity Bank, N.A.,* 95 Civ. 1924 (MBM), 1996 U.S. Dist. LEXIS 17913 (S.D.N.Y. Dec. 3, 1996).

- *Simon v. American Power Conversion Corp.,* 945 F. Supp. 416 (D.R.I. 1996).

- *TII Industries, Inc.,* 96 Civ. 4412 (SAS), 1996 U.S. Dist. LEXIS 14466 (S.D.N.Y. Oct. 1, 1996).

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP



- *In re TCW/DW North American Government Income Trust Securities Litigation,* 941 F. Supp. 326 (S.D.N.Y. Oct. 1, 1996).

- *In re Painewebber Ltd. Partnership Litigation,* 94 Civ. 8547 (SHS), 1996 U.S. Dist. LEXIS 9195 (S.D.N.Y. June 28, 1996).

- *In re Tricord Systems, Inc., Securities Litigation,* Civil No. 3-94-746, 1996 U.S. Dist. LEXIS 20943 (D. Minn. April 5, 1996).

- *In re Painewebber Limited Partnership Litigation,* 94 Civ. 8547 (SHS), 1996 U.S. Dist. LEXIS 1265 (S.D.N.Y. Feb. 6, 1996).

- *Zitin v. Turley,* [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,123 (D. Ariz. June 20, 1994).

- In re Southeast Hotel Properties Limited Partnership Investor Litigation, 151 F.R.D. 597 (W.D.N.C. 1993).

## STATE COURT OPINIONS

- *In re Tyson Foods, Inc., Consolidated Shareholder Litigation,* 919 A. 2d 563 (Del. Ch. 2007).

- *Naevus Int'l v. AT&T Corp.,* 283 A.D.2d 171, 724 N.Y.S.2d 721 (2001).

- *Paramount Communications, Inc. v. QVC Network, Inc.,* 637 A.2d 34 (Del. Super. Ct. 1994).

- *In re Western National Corp. Shareholders Litigation,* Consolidated C.A. No. 15927, 2000 Del. Ch. LEXIS 82 (May 22, 2000).

- *In re Cencom Cable Income Partners, L.P. Litigation,* C.A. No. 14634, 2000 Del. Ch. LEXIS 90 (May 5, 2000).

- *In re Cencom Cable Income Partners, L.P. Litigation,* Consolidated C.A. No. 14634, 2000 Del. Ch. LEXIS 10 (Jan. 27, 2000).

- *In re Marriott Hotels Properties II Limited Partnership Unitholders Litigation,* Consolidated C.A. No. 14961, 2000 Del. Ch. LEXIS 17 (Jan. 24, 2000).

- *Romig v. Jefferson-Pilot Life Insurance Company,* 132 N.C. App. 682, 513 S.E.2d 598 (Ct. App. 1999), aff'd, 351 N.C. 349, 524 S.E.2d 804 (N.C.S. Ct. 2000).

- *Wallace v. Wood,* 752 A.2d 1175 (Del. Ch. 1999).

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP



- *Greenwald v. Batterson*, C.A. No. 16475, 1999 Del. Ch. LEXIS 158 (July 26, 1999).

- *Brown v. Perrette*, Civil Action No. 13531, 1999 Del. Ch. LEXIS 92 (May 18, 1999).



- *In re Cencom Cable Income Partners, L.P. Litigation*, C.A. No. 14634, 1997 Del. Ch. LEXIS 146 (Oct. 15, 1997).

- *In re Marriott Hotel Properties II Limited Partnership Unitholders Litigation*, Consolidated C.A. No. 14961, 1997 Del. Ch. LEXIS 128 (Sept. 17, 1997).

- *In re Cheyenne Software Shareholders Litigation*, Consolidated C.A. No. 14941, 1996 Del. Ch. LEXIS 142 (Nov. 7, 1996).

- *Seinfeld v. Robinson*, 246 A.D.2d 291, 676 N.Y.S.2d 579 (N.Y. 1998).

- *Werner v. Alexander*, 130 N.C. App. 435, 502 S.E.2d 897 (N.C. Ct. App. 1998).

## NON-DISCRIMINATION POLICIES

Wolf Haldenstein does not discriminate or tolerate harassment against any employee or applicant because of race, creed, color, national origin, sex, age, disability, marital status, sexual orientation, or alienage or citizenship status and designs its hiring practices to ensure that minority group members and women are afforded equal employment opportunities without discrimination. The Firm is in compliance with all applicable Federal, State, County, and City equal employment opportunity laws.

Wolf Haldenstein is proud of its long history of support for the rights of, and employment opportunities for, women, the disadvantaged, and minority group persons, including the participation in civil rights and voter registration activities in the South in the early 1960's by partners of the Firm; the part-time employment of disadvantaged youth through various public school programs; the varied *pro bono* activities performed by many of the Firm's lawyers; the employment of many women and minority group persons in various capacities at the Firm, including at the partner level; the hiring of ex-offenders in supported job training programs; and the use of minority and women-owned businesses to provide services and supplies to the Firm.

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
270 MADISON AVENUE
NEW YORK, NY 10016
Telephone: 212-545-4600
Telecopier: 212-545-4653
WWW.WHAFH.COM



SYMPHONY TOWERS
750 B STREET, SUITE 2770
SAN DIEGO, CA 92101
Telephone: 619-239-4599
Telecopier: 619-234-4599

55 WEST MONROE STREET
SUITE 1111
CHICAGO, IL 60603
Telephone: 312-984-0000
Telecopier: 312-984-0001

625 NORTH FLAGLER DRIVE
WEST PALM BEACH, FL 33401
Telephone: 561-833-1776

37

WOLF
HALDENSTEIN
ADLER FREEMAN
& HERZ LLP

# EXHIBIT 6

# *DONOVAN SEARLES, LLC*

1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Phone 215-732-6067
Fax 215-732-8060
www.donovansearles.com

Michael D. Donovan, Esquire
mdonovan@donovansearles.com

David A. Searles, Esquire
dsearles@donovansearles.com

DONOVAN SEARLES, LLC, located in Philadelphia, Pennsylvania, is a law firm dedicated to providing first class litigation services to investors, consumers and small businesses. The firm's principals have substantial trial and appellate court experience prosecuting complex commercial and consumer cases. The members of the firm have appeared or argued before the United States Supreme Court, various federal and state appellate courts, the state Supreme Courts of New Jersey and Pennsylvania and federal and state trial courts throughout the country. The firm's nationwide practice focuses on class actions, shareholders' rights, consumer and commercial litigation as well as employment-related disputes. The firm strives to provide consumers, investors and small businesses with the type of sophisticated, in-depth representation that is ordinarily available only to the largest corporate clients of money-center law firms.

MICHAEL D. DONOVAN, a founding member of the firm, is admitted to practice before the Supreme Court of the United States, the United States Courts of Appeals for the Second, Third, Eighth, Ninth and Tenth Circuits, the United States District Court for the Eastern District of Pennsylvania, the United States District Courts for the Southern and Eastern Districts of New York as well as the state courts of Pennsylvania and New York and the courts of Washington, D.C. He is a graduate of Vermont Law School (J.D. cum laude 1984) and Syracuse University (A.B. 1981). He was the Head Notes Editor and a staff member of the VERMONT LAW REVIEW from 1982 through 1984. While on the LAW REVIEW, he authored Note, Zoning Variance Administration in Vermont, 8 VT. L. REV. 370 (1984). Following graduation from law school, Mr. Donovan was an attorney with the Securities and Exchange Commission in Washington, D.C., where he prosecuted numerous securities cases and enforcement matters, including injunctive and disciplinary actions against public companies, broker/dealers and accounting firms. Mr. Donovan has co-authored Preserving Judicial Recourse for Consumers: How to Combat Overreaching Arbitration Clauses, 10 LOYOLA CONSUMER L. REV. 269 (1998); "The Overlooked

Victims of the Thrift Crisis," <u>Miami Review</u>, Feb. 13, 1990 and "Conspiracy of Silence: Why S&L Regulators Can't Always Be Trusted," <u>Legal Times</u>, Feb. 5, 1990.

Mr. Donovan has served as co-lead counsel in the following securities class actions: <u>In re Sunterra Corp. Securities Litigation</u>, No. 6:00-cv-79-Orl-28B (M.D. Fla. 2005) (settled for $5,450,000); <u>In re: Worldport Communications, Inc. Securities Litigation</u>, No. 1-99-CV-1817-CC (N.D. Ga. 2001) (settled for $5,100,000); <u>Lines v. Marble Financial Corp.</u>, Nos. 90-23 and 90-100 (D. Vt. 1991)(settled for $2 million together with substantial changes to the company's loan loss reserve procedures); <u>Jones v. Amdura Corp.</u>, No. 90-F-167 (D. Colo. 1991) (action against directors settled for $4,962,500 and against company after bankruptcy for $1.2 million); <u>In re Columbia Shareholders Litigation</u> (Del. Ch. 1991)(merger case settled for $2 per share increase in amount paid to shareholders); <u>Rosen v. Fidelity Investments</u>, [1995-1996] Fed. Sec. L. Rep. ¶ 98,949 (E.D. Pa. Nov. 28, 1995) (opinion certifying class of mutual fund purchasers); <u>Selis v. KTI, Inc.</u>, No. 2:00 CV 1478 (JCL) (D.N.J. 2000) (settled for $3.8 million. In addition, Mr. Donovan has had a substantial role in the prosecution of the following cases, among others: <u>In re Trustcorp Securities Litigation</u>, No. 3:89-CV-7139 (N.D. Ohio 1990) (settled for $5,600,000); <u>Moskowitz v. Lopp</u>, 128 F.R.D. 624 (E.D. Pa. 1989) (opinion certifying class of stock and option purchasers in fraud on the market and insider trading case); <u>In re Hercules Corporation Securities Litigation</u>, No. 90-442 (D. Del. 1992) (settled for $17.25 million).

In the area of consumer justice, Mr. Donovan has argued before the Supreme Court of the United States in <u>Smiley v. Citibank (South Dakota), N.A.</u>, No. 95-860, 116 S. Ct. 806 (argued Apr. 24, 1996) and obtained favorable appellate rulings from the New Jersey Supreme Court in <u>Sherman v. Citibank (South Dakota), N.A.</u>, 668 A.2d 1036 (N.J. 1995) and <u>Hunter v. Greenwood Trust Co.</u>, 668 A.2d 1067 (N.J. 1995) and from the Pennsylvania Superior Court in <u>In re Citibank Credit Card Litigation</u>, 653 A.2d 39 (Pa. Super. 1995) and <u>Gadon v. Chase Manhattan Bank, N.A.</u>, 653 A.2d 43 (Pa. Super. 1995). Recently, Mr. Donovan obtained a landmark Truth in Lending Act decision from the Court of Appeals for the Third Circuit in <u>Rossman v. Fleet Bank (R.I.), N.A.</u>, 280 F.3d 384 (3d Cir. 2002), holding that a bank may not change a credit card promise of no annual fee. He also obtained landmark decisions from the Appellate Division of the New Jersey Superior Court and the New Jersey Supreme Court in <u>Lemelledo v. Beneficial Finance Co.</u>, 674 A.2d 582 (N.J. App. Div. 1996), aff'd, 150 N.J. 255, 696 A.2d 546 (N.J. 1997), concerning loan and insurance packing.

In May 2005, Mr. Donovan tried to jury verdict a Pennsylvania statewide consumer class action against Kia Motors America, Inc., concerning the defective brake system on the 1997-2000 models of the Kia Sephia automobile. After a two-week trial, the jury returned a verdict of $600 per class member, for an aggregate classwide verdict of $5.4 million. Samuel-Bassett v. Kia Motors America, Inc., 2006 WL 3949458 (Pa. Com. Pl. Dec. 28, 2006)(denying post-trial motions of defendant).

In September and October 2006, Mr. Donovan tried to jury verdict a Pennsylvania statewide employee class action against Wal-Mart Stores, Inc., concerning Wal-Mart's failure to pay its hourly employees for missed breaks and off-the-clock work. After a six-week trial, the jury returned a verdict for the Class in the amount of $78.4 million. A motion to award an additional $62 million in liquidated damages under the Pennsylvania Wage Payment and Collection Law is currently pending before the Court. See Braun v. Wal-Mart Stores, Inc., 2005 WL 3623389 at *5 - *7 (Pa. Com. Pl. Dec. 27, 2005)(opinion certifying class).

Mr. Donovan has appeared as a panel speaker at the Pennsylvania Bar Institute's Banking Law Update, the Practicing Law Institute's Financial Services Litigation Forum, the Consumer Credit Regulation Forum of the New Jersey Bar Association, and the National Consumer Rights Litigation Conference sponsored by the National Consumer Law Center. Mr. Donovan is a member of the American Bar Association (Litigation and Business Law Sections), the Pennsylvania Bar Association, the New York Bar Association, and the District of Columbia Bar Association. He is the Chair of the Consumer Law Subcommittee of the ABA Litigation Section's Class Actions and Derivative Suits Committee. He is also the former Vice Chair of the National Association of Consumer Advocates and an active member of Trial Lawyers for Public Justice.

DAVID A. SEARLES, a founding member of the firm, is admitted to practice before the Supreme Court of the United States, the United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania, as well as the state courts of Pennsylvania. He is a 1975 graduate of the American University School of Law, Washington, D.C., where he served on law review. Following graduation from law school, Mr. Searles was an attorney for Community Legal Services of Philadelphia, where he specialized in consumer and bankruptcy law. In 1990, he successfully argued the first consumer reorganization bankruptcy case considered by the U.S. Supreme Court, Pennsylvania v. Davenport, 495 U.S. 552 (1990), and has served as lead counsel

and presented argument in numerous bankruptcy and consumer law cases before the United States Court of Appeals for the Third Circuit, including Harris v. Green Tree Financial Corporation, 183 F.3d 173 (3d Cir. 1999); In re Colon, 941 F.2d 242 (3d Cir. 1991); Smith v. Fidelity Consumer Discount Company, 898 F.2d 896 (3d. Cir. 1990); In re Szostek, 886 F. 2d 1405 (3d Cir. 1989); Whittaker v. Philadelphia Electric Company, 882 F.2d 791 (3d Cir. 1989); Watts v. Pennsylvania Housing Finance Agency, 876 F.2d 1090 (3d Cir. 1989); Crossley v. Lieberman, 868 F. 2d 566 (3d Cir. 1989); Abele v. Mid-Penn Consumer Discount Company, 77 B.R. 460 (E.D. Pa. 1987), aff'd 845 F.2d 1009 (3d. Cir. 1988); Washington v. Heckler, 756 F.2d 959 (3d. Cir. 1985). From 1992 through 1997, Mr. Searles was associated with the Philadelphia law firm of Drinker Biddle & Reath LLP, where his practice focused on Chapter 11 bankruptcy and creditor's rights.

In June 2005, Mr. Searles was awarded the Equal Justice Award at the Community Legal Services Breakfast of Champions for his role in directing funding for legal assistance for low-income residents of Philadelphia.

Mr. Searles is the author of "Tips In Handling Individual Bankruptcy Cases," Pennsylvania Bar Association Quarterly, January 1997, and is a contributing author of Pennsylvania Consumer Law (1990). Along with Mr. Donovan, he co-authored Preserving Judicial Recourse for Consumers: How to Combat Overreaching Arbitration Clauses, 10 LOYOLA CONSUMER L. REV. 269 (1998). He has taught advanced bankruptcy law at Rutgers University School of Law - Camden, business law at Widener University and bankruptcy law at Pierce Junior College, Philadelphia. He is a past co-chairperson of the Education Committee of the Eastern District of Pennsylvania Bankruptcy Conference.

Among many other cases, Donovan Searles, LLC has been approved as Class Counsel in the following recent class actions: *Jordan v. Commonwealth Financial Systems, Inc.,* 2006 WL 2294855 (E.D. Pa. July 25, 2006); *Braun v. Wal-Mart Stores, Inc.,* 2005 WL 3623389 (Pa.Com.Pl. Dec. 27, 2005); *Perry v. FleetBoston Financial Corp.,* 2005 WL 1527694 (E.D. Pa. June 28, 2005); *Beck v. Maximus, Inc.,* 2005 WL 589749 (E.D. Pa. March 11, 2005); *Stoner v. CBA Information Services,* 352 F.Supp.2d 549 (E.D. Pa. 2005); *Orloff v. Syndicated Office Systems, Inc.,* 2004 WL 870691 (E.D. Pa. April 22, 2004); *Petrolito v. Arrow Financial Services, LLC,* 221 F.R.D. 303 (D. Conn. 2004) *Bonett v. Education Debt Services, Inc.,* 2003 WL 21658267 (E.D. Pa. 2003); *Samuel-Bassett v. Kia Motors America, Inc.,* 212 F.R.D. 271 (E.D. Pa. 2000), *vacated on*

*other grounds*; *Oslan v. Law Offices of Mitchell N. Kay,* 232 F. Supp. 2d 436 (E.D. Pa. 2002); *Oslan v. Collection Bureau of Hudson Valley*, 206 F.R.D. 109 (E.D. Pa. 2002); *Saunders v. Berks Credit & Collections*, 2002 WL 1497374 (E.D. Pa. 2002); *Schilling v. Let's Talk Cellular and Wireless*, 2002 U.S. Dist. LEXIS 3352 (E.D. Pa. 2002); *Fry v. Hayt, Hayt and Landau*, 198 F.R.D. 461 (E.D. Pa. 2000); *Smith v. First Union Mortgage Corporation*, 1999 WL 509967 (E.D. Pa. 1999).

# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ANNMARIE MALLOZZI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No: 07-10321 |
| v. | ) ) | |
| INDUSTRIAL ENTERPRISES OF AMERICA, INC.; JOHN MAZZUTO; JORGE YEPES; DENNIS O'NEILL; and JAMES MARGULIES, | ) ) ) ) | CLASS ACTION  JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

## [PROPOSED] ORDER APPOINTING LEAD PLAINTIFF AND APPROVING ITS SELECTION OF CO-LEAD COUNSEL

1.    Upon consideration and review of all the lead plaintiff motions filed herein, the Court hereby appoints the Goldenberg Group as Lead Plaintiff for the Class of purchasers of Industrial Enterprises of America, Inc. common stock between November 14, 2006, and November 8, 2007. The Goldenberg Group satisfies the requirements for Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), §21D(a)(3)(B)(iii).

2.    Pursuant to §21D(a)(3)(B)(v) of the PLSRA, the Goldenberg Group has selected and retained the law firms of Wolf Haldenstein Adler Freeman & Herz LLP and Donovan Searles, LLC, as Co-Lead Counsel in this action. The Court approves the selection of Wolf Haldenstein Adler Freeman & Herz LLP and Donovan Searles, LLC to serve as Co-Lead Counsel for the Class.

3.    Co-Lead Counsel for the Class shall have the following responsibilities and duties, to be carried out either personally or through counsel whom Co-Lead Counsel shall designate:

(a)    the briefing and argument of motions;

(b)    the conduct of discovery proceedings;

(c)    the examination of witnesses in depositions;

(d)    the selection of counsel to act as spokesperson at pretrial conferences;

(e)    to call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time;

(f)    to conduct all settlement negotiations with counsel for defendants;

(g)    to conduct and/or direct the pretrial discovery proceedings and the preparation for trial of this matter and to delegate work responsibilities to selected counsel as may be required; and,

(h)    to supervise any other matters concerning the prosecution, resolution or settlement of this action.

4.    No motion, request for discovery, or other pretrial proceedings shall be initiated or filed by any plaintiff in the Class without the approval of Co-Lead Counsel, so as to prevent the duplicative pleadings or discovery by plaintiffs.   No settlement negotiations shall be conducted without the approval of Co-Lead Counsel.

5.    Co-Lead Counsel shall have the responsibility of receiving and disseminating Court orders and notices, other than as may be served through this Court's ECF System.

6.      Co-Lead Counsel shall be the contact between plaintiffs' counsel and defendants' counsel, as well as the spokesperson for plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs' counsel.

7.      Other than as served through the Court's ECF System: Defendants shall effect service of papers on plaintiffs by serving a copy of same on Co-Lead Counsel by overnight mail service, telecopy or hand delivery.  Co-Lead Counsel shall serve copies of such papers on the other plaintiffs' counsel by first-class mail.  Plaintiffs shall effect service of papers on defendants by serving a copy on defendants' counsel by overnight mail service, telecopy, or hand delivery.

8.      During the pendency of this litigation, or until further order of this Court, the parties shall take reasonable steps to preserve all documents within their possession, custody, or control, including computer-generated and stored information, and materials such as computerized data and electronic mail, containing information which is relevant to the subject matter of the pending litigation.

9.      The Court hereby orders that Lead Plaintiff for the Class is permitted to file an amended class action complaint within 45 days of this Order.

SO ORDERED, this ___ day of _____, 2008.

_____
U.S.D.J.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ANNMARIE MALLOZZI, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

               Plaintiff,

         v.

INDUSTRIAL ENTERPRISES OF
AMERICA, INC.; JOHN MAZZUTO;
JORGE YEPES; DENNIS O'NEILL;
and JAMES MARGULIES,

               Defendants.

C.A. No: 07-10321

CLASS ACTION

<u>JURY TRIAL DEMANDED</u>

---

## <u>DECLARATION OF SERVICE</u>

Rachel S. Poplock, Esq., an attorney admitted to practice law before the courts of the State of New York, hereby declares that on January 15, 2008, I caused to be served (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to all additional counsel, the following documents:

    1.    Notice of Motion;

    2.    Declaration of Gregory M. Nespole, in Support of the Goldenberg Group's Motion for Appointment as Lead Plaintiff and for Approval of its Selection of Co-Lead Counsel, together with Exhibits; and

    3.    Memorandum of Law in Support of Motion for Appointment as Lead Plaintiff and for Approval of its Selection of Co-Lead Counsel.

Dated:   January 15, 2008

                                           Rachel S. Poplock

498612