**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

[Proposed] Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ANNMARIE MALLOZZI, INDIVIDUALLY AND         CASE No.: 07-CV-10321 (GBD)
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

                                                                         **IEAM INVESTORS' REPLY**
                                                                          **MEMORANDUM OF LAW**
          Plaintiff,                                **IN FURTHER SUPPORT OF**
                                                                          **LEAD PLAINTIFF MOTION**

      vs.

                                                                           CLASS ACTION

INDUSTRIAL ENTERPRISES OF AMERICA, INC.;
JOHN MAZZUTO; JORGE YEPES; DENNIS O'NEILL;
and JAMES MARGULIES,

          Defendants.
-------------------------------------------------------------------------X

      Plaintiff Carl Meisner[1] ("Movant" or "Mr. Meisner") respectfully submits this reply memorandum of law in further support of his motion to be appointed a Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended

---

[1] Mr. Meisner seeks appointment as Lead Plaintiff based on his purchases of IEAM stock on behalf his minor children, over whose investment accounts he exercises legal control and for which serves as fiduciary. Mr. Meisner's minor children's names are: Colon, Amanda, Abra, Sean, Dalton, and Ross. Under these circumstances, Mr. Meisner is considered a single lead plaintiff party. *See e.g. In re Vonage Initial Public Offering (IPO) Secs. Litig.*, 2007 WL 2683636 * 10 (D.N.J. Sept. 7, 2007) (considering lead plaintiff movant as one person representing family members); *In re Milestone Sci. Secs. Litig.*, 183 F.R.D. 404, 418 (D.N.J. 1998) (considering family members all as one person).

by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and in opposition to the competing Lead Plaintiff motion. Former movant, Steve Rash, has decided that he no longer wishes to serve as a Lead Plaintiff along with Carl Meisner. The undersigned respects those wishes, and have filed herewith a Notice of Partial Withdrawal. In any event, Mr. Meisner (with or without Mr. Rash), has the largest losses of any single competing lead plaintiff movant, has made a *prima facie* showing of his typicality and adequacy, and is entitled to a presumption in favor of his appointment as lead plaintiff. Other than speculative and disingenuous assertions, competing movants have failed to proffer any proof to rebut the presumption in favor of appointing Mr. Meisner, and thus, the Court must appoint him lead plaintiff and approve his selection of the Rosen Law Firm as Lead Counsel.

## ARGUMENT

### I. MR. MEISNER IS THE MOST ADEQUATE PLAINTIFF

#### A. Mr. Meisner Has Largest Financial Interest of Any Single Competing Movant

Mr. Meisner has losses of $33,807.00 giving him the largest financial interest of any member of the competing Goldenberg Group.[2] As the class member with the single largest financial interest in this litigation, Mr. Meisner should be appointed lead plaintiff. A summary of the financial interests of the competing movants is set forth below:

| MOVANT | APPROXIMATE LOSSES[3] |
|---|---|
| **Carl Meisner and his Minor Children** | **$33,807.00** |
| Goldenberg Group<br>• Ron Goldenberg<br>• Carl Haeussler | • $33,637.00<br>• $14,224.00 |

---

[2] Competing movant, styled as the "Goldenberg Group", consists of Ron Goldenberg and Carl Haeussler.

[3] *See* Kim Opp. Decl., Ex. 1.

Faced with this reality, Defendants have engaged in speculative scatter-shot and disingenuous attacks against Mr. Meisner. The Goldenberg Group, without citing a single case or statute that bars such a practice, and ignoring the widespread acceptance and proliferation of electronic agreements and transactions in commerce, the Courts, and all other facets of American life, has suggested in its papers that Mr. Meisner should be rejected because he submitted an electronic PSLRA certification.[4]

What this argument really boils down to is the erroneous suggestion that Mr. Meisner does not exist. The truth is that Mr. Meisner exists and made transactions in IEAM stock during the class period as represented. In any event, filed herewith as Exhibit 1 to the Reply Declaration of Phillip Kim ("Kim Decl."), Mr. Meisner submits a paper version of his electronic certification to nip this speculation in the bud. Moreover any suggestion that Mr. Rash, a resident of Texas, does not exist is likewise unfounded, as the undersigned had *a one hour meeting with him today in Manhattan* where he informed counsel he no longer wishes to serve as Lead Plaintiff alongside Mr. Meisner, yet pledged his continued participation in the case as he has a significant interest in the outcome. *See* Kim Decl., ¶¶ 2-4.

---

[4] It is unsettled whether parties moving for lead plaintiff even have to submit a certification that explicitly reflects each and every trade. *See* 15 U.S.C. § 78u-4(a)(2) (setting forth the requirements of a "certification filed with complaint."). *See* Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 407 (S.D.N.Y. 2004) (*citing conflicting opinions*); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 61 (D. Mass. 1996) (holding that "a purported class member seeking to serve as lead plaintiff is not required to file a certification, pursuant to section 21D(a)(2)(a), with his or her motion."); *See* Wright and Miller, Fed. Prac. & Proc. Civ.3d § 1806 ("certification requirement has been held applicable only to plaintiffs initiating a securities class action and not to those later seeking to join and be designated a lead plaintiff.")

B.   **The Court Should Not Aggregate the Losses of the Goldenberg Group As it Has Failed To Proffer the Requisite Evidence to be Considered a Proper Group Under the PSLRA**

In an effort to overcome the superior financial interest of Mr. Meisner (and also Mr. Rash), in opposition, the Goldenberg Group claims its losses should be aggregated because the group members were "friends" before making the instant motion. No reliable evidence is provided by the Goldenberg Group demonstrating the integrity of the group and the practicality of the group acting independently of the lawyers and leading the litigation.

The real question when a Court is contemplating the aggregation of losses of group lead plaintiff movants is whether the proposed aggregated group has provided "some evidence that the members of the group will act collectively and separately from their lawyers." *In re Tarragon Corp. Secs. Litig.*, 2007 WL 430732 * 2 (S.D.N.Y. Dec. 6, 2007) (rejecting to appoint a group of investors as evidence the group will act collectively and separate from their lawyers is "wholly lacking" and appointing largest single movant); *Constance Sczesny Trust v. KPMG, LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004) (rejecting to consider aggregated losses when movants failed to proffer "sufficient evidence that the support of the other shareholders he points to is adequate to support aggregation of financial interest of that putative group of shareholders for purposes of determining which moving party has the largest financial interest.").

Courts have appointed small cohesive groups when evidence is proffered as to, *inter alia*, the functioning of the group, the nature of the group structure, the intended functioning of the group, and the existing relationship if any. *See In re Gemstar-TV Guide Int'l Secs. Litig.*, 209 F.R.D. 447, 451-52 (C.D. Cal. 2002) (refusing to appoint unrelated group where it provided "no explanation of its alleged procedures and rules that govern their decision making process"); *In re*

*Lernout & Hauspie Secs. Litig.*, 138 F. Supp. 2d 39, 45 (D. Mass. 2001) (appointing group of three lead plaintiff who submitted affidavits to show their ability to work together effectively).[5]

Here the only evidence that the Goldenberg Group submits to suggest that it is a cohesive and well functioning group is a declaration (Docket no. 16-2) of *only one* of its members, Ron Goldenberg (the "Goldenberg Decl."), which raises more questions than it answers.

The Goldenberg Decl. provides a one-sided explanation as to a friendship between Mr. Goldenberg and the other group member Carl Haeussler. *See* Docket No. 16-2, ¶ 3. This begs the question why did Mr. Haeussler not submit a declaration. Could it be because the real movant interested in pursuing this action is Mr. Goldenberg (approximate losses of $33,637) and not that of Mr. Haeussler (approximate losses of only $14,224, and a person with at least two homes one in Pennsylvania and one in Florida). Even more troubling is the fact the Goldenberg Decl., does not contain any information about the group leadership structure, how the group members intend to communicate with counsel, each other, and how the group may resolve disputes. Such required information is plainly missing.

The Goldenberg Decl. states that when the Company's stock fell, that both members of the Goldenberg Group "jointly called" an attorney at the Donovan Searles Firm, who the Goldenberg Group seeks to be appointed Co-Lead Counsel with the Wolf Haldenstein Firm. *See*

---

[5] *See also In re Network Assocs. Secs. Litig.*, 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999) (*quoting Parnes v. Digital Lightwave*, No. 99-11293 (11th Cir. Aug. 25, 1999), Amicus Brief of the Securities Exchange Commission:

> To enable the court to assess whether the proposed group is capable of performing the lead plaintiff function, it should provide appropriate information about its members, structure, and intended functioning. Such information should include descriptions of its members, including any pre-existing relationships among them; an explanation of how it was formed and how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation. If the proposed group fails to explain and justify its composition and structure to the court's satisfaction, its motion should be denied or modified as the court sees fit.

Docket no. 16-2, ¶ 4.  But the certifications signed by each member of the Group are dated nearly two weeks apart and the certifications only mention the Donovan Searles Firm.  *See* Docket Nos. 8-6.  The Goldenberg Decl. provides no facts as to how communication between the two law firms will be coordinated, let alone even mentions proposed Co-Lead Counsel the Wolf Haldenstein Firm, nor do they provide a listing that any member of the Goldenberg Group is aware of their fiduciary obligations.  It is clear, that the Goldenberg Group, whose members were apparently not even interested in filing a complaint in this action, has failed to provide the minimum level of information required in order for the Court to allow the Group to aggregate their losses to determine the largest financial interest.  *See In re Tarragon Corp. Secs. Litig.*, 2007 WL 430732 at * 2.  Thus, the Court must consider each of the three remaining movants' financial interest separately.  *See In re Pfizer Inc. Secs. Litig.*, 2005 U.S. Dist. LEXIS 24891, at *6 (S.D.N.Y. Oct. 21, 2005) (Owen, J.) ("I will consider each potential lead plaintiff individually, and not as artificially grouped by its attorneys.").

As such the Court must consider the financial interests of each movant separately and appoint as lead plaintiff the single investor with the largest financial interest.  As demonstrated in Point IA, Mr. Meisner has the largest financial interest in this litigation with losses of $33,807 which is greater than the losses suffered by either competing movant Mr. Goldenberg or Mr. Haeussler.

    **C.**    **Mr. Meisner Has Made a *Prima Facie* Demonstration of Adequacy and Typicality**

As set forth in his opening and opposition papers, Mr. Meisner has individually (and collectively) made a *prima facie* demonstration of his adequacy and typically under Rule 23.  As Mr. Meisner has the largest individual losses as compared to any single competing lead plaintiff

movant, and has made a *prima facie* demonstration of his adequacy and typicality he is entitled to the presumption in favor of his appointment as Lead Plaintiff.

## II.     THE PRESUMPTION OF ADEQUACY HAS NOT BEEN REBUTTED

The competing movants have not submitted any "proof" to rebut the presumption in favor of the Mr. Meisner appointment other than baseless speculation that he does not exist.  Not only is this type of speculation insufficient, it simply is a complete falsehood.  *See* Point IA, *supra.*; Kim Decl., Ex. 1; *see also* 15 U.S.C. § 78u-4(a)(3)(b)(iii)(II) (proof is required to rebut the presumption); *In re Fuwei Films Secs. Litig.*, -- F.R.D.---, 2008 WL 216289 * 4 (S.D.N.Y. Jan 24, 2008); *see also Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 547-48 (N.D. Tex. 1997) ("speculative assertions are insufficient to rebut the presumption" of adequacy); *Sofran*, 220 F.R.D. at 403-04 (emphasizing that the PSLRA requires proof of inadequacy and not mere "speculation"); *Constance Sczesny Trust*, 223 F.R.D. at  324 ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence …."); *Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006 ) (same).[6]

---

[6] *See  also Sofran*, 220 F.R.D. at 402 ("That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence.  So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirement, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.").

## CONCLUSION

For the foregoing reasons, the Mr. Meisner respectfully requests that the Court issue an Order (1) appointing him as Lead Plaintiff for the Class; (2) approving his selection of The Rosen Law Firm, P.A. as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

                        Respectfully submitted,

Dated: February 14, 2008

**THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

[Proposed] Lead Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 14th day of February, 2008, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


            /s/ Phillip Kim